SOO LINE RAILROAD COMPANY,
Appellant,

v.

IOWA DEPARTMENT OF TRANS-
PORTATION and the City of
Spencer, Iowa, Appellees.

No. 93–853.

Supreme Court of Iowa.

Sept. 21, 1994.

Rehearing Denied Oct. 17, 1994.

Patrick J. Nugent of C.P. Legal Services, Minneapolis, MN, for appellant.

Bonnie J. Campbell, Atty. Gen., and Carolyn J. Olson, Asst. Atty. Gen., for appellee Iowa Dept. of Transp.

Donald J. Hemphill of Hemphill Law Office, Spencer, for appellee City of Spencer.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, SNELL, and TERNUS, JJ.

TERNUS, Justice.

This case is an appeal of agency action pursuant to Iowa Code chapter 17A (1991). The Soo Line Railroad Company (Soo Line) appeals from the district court's decision on judicial review. The district court upheld the Department of Transportation's (DOT) grant of the City of Spencer's request for an additional grade crossing. Soo Line argues that (1) the DOT unconstitutionally delegated its decision-making authority; (2) the DOT failed to explain the standards for its decision to allow a new crossing; (3) the DOT erroneously refused to close other crossings; (4) the DOT incorrectly allocated the costs and failed to explain the basis for the allocation it made; and (5) the DOT's decision results in a taking of Soo Line's property without due process or just compensation. We affirm.

I. *Background Facts and Proceedings.*

In 1991 the City of Spencer, Iowa (City) filed an application with the DOT concerning a grade crossing dispute it had with the Soo Line Railroad Company. *See* Iowa Code § 327G.16 (1991) (where railroad and city cannot agree on location of street crossing, either party may apply to the DOT to resolve the disagreement). This dispute arose when the City requested permission to extend First Avenue West across the railroad tracks in downtown Spencer. The City wanted to divert traffic onto First Avenue West primarily to reduce traffic on the City's main thoroughfare, Grand Avenue.

Soo Line resisted the establishment of the crossing. Its primary objections centered on (1) the existence of six crossings within a mile of the proposed crossing, and (2) the difficulties Soo Line would encounter in its switching operations. Soo Line requested that one or more existing crossings be closed if the new crossing was allowed.

The City's application was assigned to an administrative law judge (ALJ) who conducted an evidentiary hearing. *See id.* §§ 327G.16, .17 (the application to the DOT is referred to the department of inspections and appeals for hearing and decision). The ALJ granted the City's request for an additional crossing and refused to close any of

the existing crossings. He assessed the construction costs to the City and the maintenance costs to Soo Line. In addition, the ALJ required Soo Line to grant an easement to the City for the crossing. The City was ordered to pay Soo Line $10,000 for this easement.

Soo Line appealed the ALJ's decision to the DOT. *See id.* § 327G.17 (the order of the department of inspections and appeals is subject to review by the DOT). Soo Line requested that the director of the DOT, not the director's designee, decide the case. However, the director appointed a designee to make the final agency decision. The director's designee affirmed the ALJ's order.[1]

Soo Line filed a petition for judicial review of the agency action. *See id.* (the decision of the DOT is the final agency action). The district court affirmed the agency's decision and Soo Line appealed. *See id.* § 17A.20 (losing party in judicial review proceeding may appeal as in other civil cases).

## II. *Scope of Review.*

■ Our review is for correction of errors at law. *Peterson v. Iowa Dep't of Transp.,* 508 N.W.2d 689, 691 (Iowa 1993). However, when constitutional issues are raised, our review is de novo. *Jones v. Madison County,* 492 N.W.2d 690, 694 (Iowa 1992).

## III. *Use of Director's Designee.*

Soo Line argues that the DOT unconstitutionally delegated its decision-making responsibility. The City asserts that Soo Line did not preserve error on this issue. Additionally, the City argues that the designation was not unconstitutional.

■ In contested cases our review is limited to those questions considered by the administrative agency. *Chicago & N.W. Transp. Co. v. Iowa Transp. Regulation Bd.,* 322 N.W.2d 273, 276 (Iowa 1982). Constitutional issues must be raised at the agency level to be preserved for judicial review.

*Fisher v. Board of Optometry Examiners,* 478 N.W.2d 609, 612 (Iowa 1991); *Office of Consumer Advocate v. Iowa State Commerce Comm'n,* 465 N.W.2d 280, 283 (Iowa 1991). This is true despite the agency's lack of authority to decide constitutional questions. *Office of Consumer Advocate,* 465 N.W.2d at 283; *Shell Oil Co. v. Bair,* 417 N.W.2d 425, 430 (Iowa 1987). Therefore, we look to the record before the agency to see if Soo Line raised this constitutional issue there.

In the cover letter for its appeal to the DOT, Soo Line asked that the director, not a designee, make the agency decision. In its appeal to the director, Soo Line raised the issue as follows: "Must the Director of Transportation, rather than a designee, decide this appeal? Explain." In his decision on appeal, the designee simply noted Soo Line's request and the director's subsequent appointment of a designee.

In its petition for judicial review of agency action, Soo Line argued that the director had "improperly, illegally, and unconstitutionally delegated agency decision-making authority" to the director's designee. The district court ruled that there was no basis for Soo Line's contention that the director erroneously delegated his authority.

■ The City argues that Soo Line did not raise the constitutional issue of improper delegation before the agency. We agree. Although Soo Line questioned whether the director, not the director's designee, should make the final agency decision, it did not alert the agency to the constitutional issue it seeks to raise here. Therefore, this issue was not preserved for our review.

## IV. *Standards For New Crossings.*

■ Soo Line contends that the DOT's decision was unreasonable, arbitrary and capricious. *See* Iowa Code § 17A.19(8)(g) (1991) (agency action may be reversed if it is unreasonable, arbitrary or capricious). An agency's action is "arbitrary" or "capricious" when it is taken without regard to the law or

---

1. The DOT "may make a decision affirming, modifying or reversing the administrative law judge's decision, or may remand the case to the administrative law judge." 761 Iowa Admin.Code § 13.7(9) (1989). Although the director's designee failed to expressly state that he affirmed the ALJ's order, it is apparent from a review of the designee's decision that he did so. Consequently, we treat the ALJ's order as part of the DOT's decision on appeal.

facts of the case. *Office of Consumer Advocate v. Iowa State Commerce Comm'n,* 432 N.W.2d 148, 154 (Iowa 1988). Agency action is "unreasonable" when it is "clearly against reason and evidence." *Frank v. Iowa Dep't of Transp.,* 386 N.W.2d 86, 87 (Iowa 1986).

Soo Line asserts two reasons that the agency's decision was unreasonable, arbitrary and capricious. First, it claims that the DOT failed to explain the standards it used in its decision to allow a new crossing in the City. Second, it criticizes the agency for failing to discuss in its decision certain "study variables" mentioned in the agency's regulations for safety evaluations of rural crossings.

■ We have examined the agency's decision. When read with the ALJ order it affirmed, we conclude the agency sufficiently explained the standards it used. The ALJ stated in detail his findings of fact. He concluded that he must balance the interests of the parties in arriving at a just decision. He then analyzed the benefits and burdens of a new crossing on the City and Soo Line. The balance struck by the ALJ is easily deduced from his ultimate decision to allow the new crossing. He decided that the interests of the City in having a new crossing outweighed the disadvantages to Soo Line if the new crossing was allowed. We find no merit in Soo Line's criticism that the agency failed to explain the standards used in its decision.

■ We turn now to the second argument made by Soo Line to support its claim of unreasonable, arbitrary and capricious agency action—that the agency did not discuss certain "study variables." The DOT has adopted guidelines to be used in evaluating the safety of rural railroad-highway crossings. 761 Iowa Admin.Code ch. 812 (1990). Although these guidelines apply only to rural crossings, section 812.4 lists some of the "study variables" that would be involved in evaluating the safety of a municipal crossing. Soo Line claims the agency should have discussed these factors in its decision.

Although the safety of the proposed crossing was a relevant consideration here, it does not follow that the DOT had to discuss each variable, item by item. Moreover, a review of the ALJ's order reveals that he discussed many of the variables listed in section 812.4, such as vehicle traffic, the existence of switch tracks, and switching and through train movements. There is no merit to this assignment of error.

■ Although Soo Line also challenges the agency's decision to allow a new crossing on other grounds which may be raised on judicial review (*see* Iowa Code section 17A.19(8)), it cites no authority nor offers any substantive argument in support of these additional grounds. Therefore, we do not consider them. *Moore v. Vanderloo,* 386 N.W.2d 108, 113 (Iowa 1986); Iowa R.App.P. 14(a)(3).

## V. *DOT's Refusal to Close Other Crossings.*

The ALJ ruled that Soo Line had failed to justify the closing of an existing crossing in view of the substantial use of these crossings by vehicular and pedestrian traffic. Soo Line complains that this conclusion was erroneous. The City contends that the closing of other crossings should not have been considered in this proceeding. It also argues that there was substantial evidence to support the agency's decision not to close other crossings in the City.

■ We defer to an administrative agency's interpretation of a statute that it administers. *Furry v. Iowa Dep't of Transp.,* 464 N.W.2d 869, 873 (Iowa 1991). Additionally, we are bound by the DOT's findings of fact if substantial evidence supports them. *Id.* at 871.

■ Initially, we hold that the DOT properly considered Soo Line's request that other crossings be closed. During the several years that Soo Line and the City discussed the possibility of placing a crossing at First Avenue West, Soo Line had consistently requested the closing of one or more of the existing crossings. The closing of an existing crossing had always been part of the dispute between these parties. It was not a "separate and distinct" issue as the City contends; the benefits and burdens of a new crossing and the existing crossings were interrelated.

Consequently, we find no error in the DOT's consideration of this issue.

Nor do we find a lack of evidence to support the factual findings made by the agency on this issue. At the hearing, Soo Line argued that an additional crossing in the City's downtown area would prevent it from operating its railroad because it would be unable to comply with state and federal requirements. *See* Iowa Code § 327G.32 (1991) (railroad may not block a highway crossing more than ten minutes); 49 C.F.R. parts 171–174, 179 (1993) (regulations on hazardous material car spacing and movement), part 228 (hours of service rules), part 232 (air brake testing requirements). Soo Line suggested closing one of the six existing crossings so that it would have an adequate length of track uninterrupted by crossings to perform the operations required by law. Soo Line also argued that seven crossings within one mile were too many and that at least one crossing should be closed.

The City opposed closing any crossing, arguing that the public use justified all six crossings and that closing them would not solve the railroad's operational problems. It also represented that it would not object to the railroad's blockage of crossings in the downtown area beyond the ten-minute limit when necessary to comply with federal regulations.

The ALJ found that all the crossings had substantial vehicular and pedestrian traffic. In addition, the evidence showed that only the closing of the crossing at Tenth Avenue East or Fourth Avenue West would significantly address the operational concerns raised by Soo Line.

■ Tenth Avenue East is an extra-wide thoroughfare that is heavily traveled. It extends northerly along the east boundary of the City, functioning as a bypass of the City for vehicles approaching from the east and traveling to the north. It serves the City's high school and athletic fields, the City's water pollution control facilities, the City's public works facilities and a large baseball and softball complex. These facts support the DOT's decision that closing the crossing at Tenth Avenue East was not a viable option.

■ The need for the crossing at Fourth Avenue West is more debatable. Although that crossing is currently well traveled, the City anticipates that some traffic on Fourth Avenue West will use First Avenue West once a crossing is opened on that street. The City argues that to open First Avenue West and close Fourth Avenue West would simply move the point of congestion from Fourth Avenue West to First Avenue West. On the other hand, Soo Line's need to eliminate this crossing was also debatable. Soo Line's witnesses testified that some of the operational problems Soo Line would experience if a new crossing is added could be reduced by closing the Fourth Avenue West crossing. However, a witness for Soo Line testified that the railroad could still function, although at a higher cost, if a new crossing was allowed and no existing crossing was closed. Although the question is close, we conclude there was substantial evidence to support the DOT's decision not to close the Fourth Avenue West crossing.

■ Finally, we consider Soo Line's argument that an existing crossing should be closed simply because seven crossings within one mile are too many. As this case aptly shows, the benefits and burdens of a crossing vary depending on the use of the street and tracks at that particular crossing. Although proximity to other crossings is a relevant consideration, we see no reason to limit the number of municipal crossings based solely on this factor.

## VI. *Allocation of Costs.*

The DOT assessed construction costs to the City and maintenance costs to Soo Line. Soo Line contends that the DOT did not set forth and explain the standards it used to allocate the costs of maintaining the crossing.

■ The statute governing the resolution of this dispute states:

The order [resolving the disagreement] shall include the portion of the expense to be paid by each party to the controversy. In determining what portion of the expense shall be paid by each party the department of inspections and appeals may

consider the ratio of the benefits accruing to the railroad or the governmental unit or both, to the general public use and benefit.

Iowa Code § 327G.17 (1991). A review of the ALJ's order shows that he relied, in part, on the factor mentioned in the statute—a comparison of the benefits accruing to the City and Soo Line—to decide how to allocate the costs. That factor was the primary basis for his decision to assess all the construction costs to the city.

■■■ However, this comparison-of-the-benefits factor is not exclusive. *See id.* ("the department ... *may* consider") (emphasis added). Therefore, the ALJ properly considered other relevant facts in allocating the costs. The ALJ observed that Soo Line was responsible for the maintenance of the other crossings in the City. He also explained that the assignment of maintenance costs to Soo Line coincided with its statutory duty to maintain railroad crossings. *See id.* § 327G.2; *Monson v. Chicago, R.I. & P. Ry.,* 181 Iowa 1354, 159 N.W. 679 (1916). We conclude that the agency adequately explained the basis for its allocation of costs.

■■■ Soo Line also comments in its brief that the required transfer of an easement from Soo Line to the City deprived it of the protections of statutory condemnation procedures. *See* Iowa Code chs. 6A, 6B (1991). Soo Line's random mention of this issue, without elaboration or supportive authority, is insufficient to raise the issue for our consideration. *Hubby v. State,* 331 N.W.2d 690, 694 (Iowa 1983); Iowa R.App.P. 14(a)(3).

VII. *Claim of Unconstitutional Taking.*

Soo Line argues that the DOT's decision to allow a new crossing results in a taking of its property without just compensation in violation of the United States and Iowa Constitutions. *See* U.S. Const. amend. V; Iowa Const. art. I, § 18. The "taking" challenged here is indirect. Soo Line asserts that if the additional crossing is installed and no existing crossings are closed, it will become economically unfeasible for it to run its railroad in the City's downtown area. It claims it will have to relocate.

Soo Line classifies this interference with the use of its property as a taking. It wants compensation from the City in the form of reimbursement for its relocation costs.

The district court found, and the City argues, that Soo Line did not preserve error on this issue because it did not raise this issue in the initial pleadings before the agency. Before the hearing on this case, the ALJ listed the issues to be resolved as agreed upon by the parties. This list did not include the issue of an unconstitutional taking. Soo Line first raised this issue in its appeal to the director of the DOT.

■■■ Our review is generally limited to questions raised at or before the hearing held by the agency. *Buchholtz v. Iowa Dep't of Public Instruction,* 315 N.W.2d 789, 794 (Iowa 1982). There are two reasons for this rule of error preservation. First, fairness requires that an issue be raised while one's opponent still has an opportunity to respond to the issue. *Peterson v. Iowa Dep't of Transp.,* 508 N.W.2d 689, 692 (Iowa 1993). Second, the agency should have an opportunity to consider and rule on the issue. *Chicago & N.W. Transp. Co. v. Iowa Transp. Regulation Bd.,* 322 N.W.2d 273, 276 (Iowa 1982).

■■■ Consistent with the reasons underlying this rule of error preservation, we have recognized limited exceptions. An issue not raised in the initial pleading before the agency may be preserved for appeal by inclusion in a motion for rehearing if the party could not have raised the issue earlier. *Office of Consumer Advocate,* 465 N.W.2d at 283. We have also considered an issue on judicial review when it was raised for the first time in an application for rehearing where the opportunity for response by the opponent was adequate at that stage of the proceedings. *Peterson,* 508 N.W.2d at 692.

■■■ We do not think that either exception applies here. Soo Line could have raised the issue of an unconstitutional taking in the initial stages of the agency proceeding. Therefore, this issue was not raised at the earliest opportunity. In addition, the resolution of this issue depends upon proof that the allowance of an additional crossing would

substantially deprive Soo Line of the use of its property. *Easter Lake Estates Inc. v. Polk County*, 444 N.W.2d 72, 75 (Iowa 1989). This inquiry is fact intensive. Consequently, the City did not have an adequate opportunity to respond to this issue when raised for the first time after the hearing.

We agree with the district court that Soo Line did not preserve this error for judicial review.

**AFFIRMED.**