Chad **BREWBAKER**, Plaintiff–Appellant,

v.

**STATE of Iowa BOARD OF REGENTS**, Defendant–Appellee.

No. 12–1371.

Court of Appeals of Iowa.

Oct. 23, 2013.

James L. Sayre of James L. Sayre, P.C., Clive, for appellant.

Thomas J. Miller, Attorney General, and Jordan Esbrook, Assistant Attorney General, for appellee.

Heard by VOGEL, P.J., and DANILSON and TABOR, JJ.

VOGEL, P.J.

This appeal arises from the suspension of Chad Brewbaker from his graduate studies in the Department of Electrical and Computer Engineering at Iowa State University (ISU). The suspension was

due to Brewbaker's repeated harassment of O.N., another graduate student supervised by the same professor. Brewbaker appeals the decision of the Board of Regents (the Board), as affirmed by the district court.

■ We find no double jeopardy violation, considering the suspension was to protect the integrity of the ISU community rather than to punish Brewbaker as it was when Brewbaker was found guilty of harassment in district court, based on the same conduct. Other constitutional claims were either not preserved or have no merit, and we find substantial evidence supports ISU's imposition of the sanction chosen.[1]

## I. Factual and Procedural Background

Brewbaker was a graduate student during the 2008 to 2009 academic year and was also a paid graduate assistant with a $20,000 annual stipend. Brewbaker's harassment of O.N. began in approximately September 2008. O.N. approached both Brewbaker and their advisor, Srinivas Aluru, to address this problem, and Aluru set out written guidelines as to how Brewbaker should appropriately interact with O.N. These guidelines included refraining from using abusive language or attempting to establish a personal relationship with O.N., not employing intimidation to coerce O.N. into conversation, refraining from monitoring her activities, and limiting any interaction to purely work-related matters or neutral topics. On January 27, 2009, Aluru sent an email to Brewbaker, noting he had "violated the guidelines several times" and explaining how his conduct had created a difficult work environment for the graduate group. On February 2, 2009, Aluru set out further guidelines and directed Brewbaker to cease any communication with O.N. Brewbaker was given a new office in another building and was prohibited from entering the communal lab space.

Despite these restrictions, Brewbaker continued to harass O.N., attempting to enter the lab and sending her seven emails between April 17, 2009 and July 27, 2009. O.N. did not immediately see these emails due to a filter that blocked any communication coming from Brewbaker's account. When O.N. checked the filter inbox at the end of July, she immediately notified the Dean of Students, Dione Somerville. Somerville then charged Brewbaker under the ISU Student Disciplinary Regulations sections 4.2.7, 4.2.9, and 4.2.11, that is, harassment and discriminatory harassment, disruption of rights, and contempt.[2] On July 30, following the protocol set out in these regulations, Brewbaker was placed on an immediate interim suspension, which included a restriction from all ISU campus property.

A notice of this suspension was sent to Brewbaker, which included the reasons for the suspension, as well as notice of the

---

1. We note Brewbaker's suspension has ended, rendering the ultimate issue in this case moot. However, we will address the merits of the case, given this is a situation capable of repetition evading review. *See Rhiner v. State*, 703 N.W.2d 174, 177 (Iowa 2005) (where a problem is likely to reoccur, the court can decide to reach the merits of a controversy even though the case is moot).

2. ISU Student Disciplinary Regulations section 4.2.7 includes "harassment" as defined under Iowa Code section 708.7, which states: "A person commits harassment when, with intent to intimidate, annoy, or alarm another person, the person does any of the following: (1) Communicates with another by telephone, telegraph, writing, or via electronic communication without legitimate purpose and in a manner likely to cause the other person annoyance or harm." Iowa Code § 708.7(1)(a)(1) (2011).

opportunity to contest the interim suspension at a hearing set for August 4, 2009. The bases for the charges asserted in the notice included: (1) communication with O.N. through email after being instructed by Aluru to cease all communication, and (2) repeatedly knocking on the door of the lab despite Aluru having forbidden Brewbaker to return to the area. The notice stated Brewbaker's conduct constituted "a significant danger regarding the health and safety of the university community," which warranted the immediate interim suspension.

Brewbaker did not attend the August 4 hearing at ISU, which left the interim suspension in place as uncontested. Another notice was sent to Brewbaker on August 12, 2009, again detailing the charged violations as well as his rights, including the right to have an administrative law judge (ALJ) preside over the case. Brewbaker elected to exercise these rights.

In the meantime, the police were notified of Brewbaker's conduct, after which Brewbaker was charged with third-degree harassment pursuant to Iowa Code sections 708.7(1) and 708.7(4) (2009), a simple misdemeanor. The case was tried before a jury on October 24, 2009, and resulted in a guilty verdict. Brewbaker was given a suspended thirty-day jail sentence, placed on probation not to exceed one year, and ordered to pay associated fines and costs. On appeal to the district court, his conviction was affirmed on July 15, 2010, in a well-reasoned order.

The administrative action proceeded to a hearing on ISU's pretrial motion entitled "motion in limine" on May 25, 2010. ISU argued Brewbaker's culpability was already conclusively established, given his conviction in district court. The ALJ ruled in favor of ISU as to the preclusive effect Brewbaker's conviction would have on the harassment charge, but concluded ISU would need to present evidence as to the other charges. Consequently, ISU dropped the disruption-of-rights and contempt charges.

The hearing on Brewbaker's ultimate sanction for harassment was delayed several times due to Brewbaker's repeated change of counsel. It ultimately proceeded to a dispositional hearing on September 14, 2010. The ALJ imposed a one-year suspension from the date of the order—September 28, 2010—without credit for Brewbaker's interim suspension. Brewbaker would be allowed to attend ISU after the conclusion of the 2011 spring semester. University President Gregory Geoffroy affirmed the decision on December 8, 2010, and the Board affirmed on April 29, 2011. Brewbaker then sought judicial review alleging several bases of error. The district court set forth the critical facts and the extensive procedural history of the case. After a detailed analysis of all the issues, the court dismissed the petition for judicial review and affirmed the decision of the Board.[3]

## II. Standard of Review

Under Iowa Code section 17A.19 (2011), our review of agency action is to determine whether our conclusions are the same as those of the district court. *Stephenson v. Furnas Elec. Co.*, 522 N.W.2d 828, 831 (Iowa 1994). "The district court may grant relief if the agency action has prejudiced the substantial rights of the petitioner, and the agency action meets

---

3. In its brief, the Board asserts Brewbaker's appeal was untimely, which, if correct, would deprive us of jurisdiction to hear the appeal. Because this appeal was taken within thirty days of the district court's ruling on Brewbaker's motion to enlarge, we find the appeal timely. *See* Iowa R.App. P. 6.101(1)(b).

one of the enumerated criteria contained in section 17A.19(10)(a) through (n)." *Renda v. Iowa Civil Rights Comm'n*, 784 N.W.2d 8, 10 (Iowa 2010). Reviewing the record as a whole, we may reverse, modify, affirm, or remand to the agency for further proceedings if the agency's factual findings are not supported by substantial evidence, or its application of law to the facts is irrational, illogical, or wholly unjustifiable. *Westling v. Hormel Foods Corp.*, 810 N.W.2d 247, 251 (Iowa 2012); *Second Injury Fund v. Nelson*, 544 N.W.2d 258, 264 (Iowa 1995). However, when constitutional issues are involved, our review is de novo. *Soo Line R.R. Co. v. Iowa Dep't of Transp.*, 521 N.W.2d 685, 688 (Iowa 1994).

## III. Constitutional Violations

Brewbaker asserts various constitutional violations during this proceeding, including a denial of due process, a violation of his right to free speech, a denial of equal protection, and a violation of the Double Jeopardy Clause.[4]

### A. Error Preservation

The Board argues Brewbaker did not preserve error with respect to his due process, equal protection, and freedom-of-speech claims, given he did not present these issues to the ALJ. As to the freedom-of-speech claim, the district court determined Brewbaker preserved error because he raised the issue before President Geoffroy and the Board. Even though Brewbaker did not argue this issue before the ALJ, the court concluded the issue was raised before the administrative agency and proceeded to issue a ruling on the merits.

■ To preserve an issue on appeal, the party must first argue the issue before the agency. *Id.* This remains true for constitutional claims as well, though the agency lacks the authority to decide constitutional questions. *Id.* (concluding the issue of improper delegation was not raised before the agency, even though the petitioner questioned whether the designee was the appropriate person to decide these issues, as the agency was never put on notice of the exact constitutional issue).

■ With respect to the due process and equal protection claims, the district court determined, and we agree, that these issues were not raised at any level of the agency.[5] Therefore, error was not preserved. *See id.*

■ However, our case law has yet to address the issue of whether error can be preserved by raising an issue for the first time on intra-agency appeal, that is, when it is not raised in the initial hearing, but is still raised during agency review. Though it is a fundamental component of our error preservation rules that an issue be raised at the first opportunity, we note the purpose of these rules is to give both the opposing party and the agency an opportunity to address the issue. *See id.* at 691. In keeping with this reasoning, our case law has held error has been preserved when a constitutional issue is raised for the first time in a petition for rehearing. *Rosen v. Bd. of Med. Exam'rs*, 539 N.W.2d 345, 352 (Iowa 1995); *Office of Consumer Advocate v. Iowa State Commerce Comm'n*, 465 N.W.2d 280, 283 (Iowa 1991).

■ Here, President Geoffroy extensively analyzed the issue of whether Brew-

---

4. While raising constitutional issues, Brewbaker makes only passing reference within cited case law to the United States Constitution and makes no reference to the Iowa Constitution.

5. Additionally, counsel conceded at oral argument the due process claim was not raised before the agency.

baker's right to free speech was violated. When error preservation was raised before the district court, it found the issue was not waived and proceeded to address the merits. We agree with the district court. Therefore, we hold error may be preserved if a party raises the issue during an intra-agency appeal and the agency rules on the issue, even if it was not previously raised during the initial agency hearing.

## B. Free Speech

 Brewbaker asserts the emails he sent to O.N. were neither threatening, abusive, harassing, nor "fighting words," such that his right to free speech under the First Amendment of the United States Constitution was violated when he was suspended for sending these emails. Brewbaker relies on *State v. Drahota*, 280 Neb. 627, 788 N.W.2d 796, 804 (Neb.2010), which held words must do more than offend or cause anger to lose the protection of the First Amendment, and *Coates v. Cincinnati*, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971), which struck down a statute prohibiting "annoying" conduct as unconstitutionally vague and overly broad. Brewbaker further claims he had a legitimate purpose in communicating with a former friend and colleague, and so did not commit harassment.

By citing case law that pertains to state law, rather than disputing his violation of the student disciplinary regulations, Brewbaker is attempting to collaterally attack his criminal conviction, which is impermissible. *See generally Fetters v. Degnan*, 250 N.W.2d 25, 31 (Iowa 1977) (stating a collateral attack on a criminal conviction is impermissible except on jurisdictional grounds). Brewbaker's conviction was affirmed by the district court on July 15, 2010, and thus cannot now be challenged. Furthermore, the argument that conduct constituting harassment under Iowa Code

section 708.7(1)(a) is rendered unconstitutional by the First Amendment is obviated by *State v. Fratzke*, 446 N.W.2d 781, 783 (Iowa 1989). In *Fratzke*, the supreme court rejected a First Amendment challenge to the crime of harassment. *Id.; see also State v. Evans*, 672 N.W.2d 328, 331 (Iowa 2003) (citing *Fratzke* with approval). While Brewbaker claims *Drahota* is persuasive authority, as a case out of Nebraska, its ruling is not binding on this court, nor do its facts resemble those presented here. Therefore, under the plain language of the Iowa Code, Brewbaker's argument is without merit, and we affirm the district court's denial of this claim.

## C. Double Jeopardy

 Brewbaker next contends his suspension by ISU, in addition to his criminal punishment meted out by the district court, violates the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, given he was twice punished for the same conduct.

 The Double Jeopardy Clause prohibits multiple punishments for the same offense. *Dressler v. Iowa Dep't of Transp.*, 542 N.W.2d 563, 565 (Iowa 1996). A civil penalty imposed after a criminal penalty will constitute multiple punishments in violation of the Double Jeopardy Clause when the sanction, as applied in the individual case, serves the goal of punishment. *Id.* However, if the civil sanction is remedial, the Double Jeopardy Clause is not violated. *Id.*

While the ALJ characterized Brewbaker's suspension as both sanction and punishment, the notices sent to Brewbaker, President Geoffroy's opinion, as well as the ISU Student Code of Conduct clearly state the purpose of the suspension is to protect the members of the school's community and preserve the academic environment. This indicates the purpose of Brewbaker's

suspension is not to punish, but to protect the integrity of the ISU community. Consequently, the suspension serves a remedial, rather than punitive, purpose, and does not violate the Double Jeopardy Clause. *See State v. Kocher,* 542 N.W.2d 556, 558 (Iowa 1996) (holding the administrative revocation of a driver's license following a conviction for driving while intoxicated did not violate the Double Jeopardy Clause, as the administrative proceeding was remedial); *see also Clark v. State,* 220 Ga.App. 251, 469 S.E.2d 250, 252 (1996) (ruling that a suspension from school after conviction of armed robbery did not violate the Double Jeopardy Clause because the purpose of the suspension was to protect the health and safety of students); *State v. Davis,* 126 N.C.App. 415, 485 S.E.2d 329, 332 (1997) (ruling that an expulsion from high school for possession and sale of drugs prior to a criminal conviction did not constitute punishment for purposes of the Double Jeopardy Clause). Therefore, we affirm the district court as to this claim.

## IV. The Agency's (the Board's) Decision

Brewbaker next argues the agency's decision was affected by errors at law, as it relied on evidence outside of the administrative record. Brewbaker further claims the agency's ruling is not supported by substantial evidence, and the suspension, as imposed, is an abuse of discretion.

### A. Agency Rules

Brewbaker states President Geoffroy improperly relied on correspondence between Brewbaker and the district associate judge to uphold the ALJ's decision. Brewbaker argues this letter was not before the ALJ, and so could not be relied upon by President Geoffroy when rejecting the probation officer's claim that Brewbaker "has learned a great deal from this experience." Therefore, he asserts the agency's decision was affected by errors at law, and should be reversed pursuant to Iowa Code section 17A.19(10)(b) and (c).

■ In the absence of specific administrative rules, the Iowa Administrative Procedure Act (IAPA) sets forth the procedures for agencies to follow, including evidentiary rules. Iowa Code §§ 17A.14–.19. On appeal, the agency retains all powers it held in the initial decision, which include the power to take official notice "of all facts of which judicial notice may be taken." *Id.* §§ 17A.14(4), .15(3). When an agency exercises its right to take official notice of facts, it must notify the parties and provide an opportunity to respond to the new evidence. *Id.* § 17A.14(4). Our case law has recognized this provision is in harmony with the tenet that agencies are not bound by technical rules of evidence, and the scope of evidence an agency may consider is expanded, rather than contracted. *IBP, Inc. v. Al–Gharib,* 604 N.W.2d 621, 630 (Iowa 2000).

■ In his appeal to President Geoffroy, Brewbaker submitted additional evidence not considered by the ALJ, including a letter from his probation officer. President Geoffroy sent a notice acknowledging the appeal as well as the additional evidence. This letter also informed Brewbaker that President Geoffroy was taking official notice of two documents from Brewbaker's criminal file: the letter from Brewbaker to the associate district court judge, and an order setting a hearing on Brewbaker's request to lift the no-contact order. The notice then stated: "Copies of these court documents are attached to this acknowledgment. I intend to take judicial notice of these court documents in this matter. I am allowing counsel 14 days to submit to the undersigned any comment or argument concerning these court docu-

ments." Brewbaker did not submit comment or argument concerning the court documents or the fact President Geoffroy took judicial notice of them.

As the entity presiding over the intra-agency appeal, consideration of the court documents was within President Geoffroy's discretion. *See* Iowa Code § 17A.14(4) ("Official notice may be taken of all facts of which judicial notice may be taken and of other facts within the specialized knowledge of the agency."). Moreover, counsel was given the opportunity to respond to this issue before President Geoffroy issued his decision, as required by the IAPA. Apart from the inequity that would result if we were to hold President Geoffroy could not consider court documents when he could take into account documents submitted by Brewbaker, the agency clearly followed the proper evidentiary procedures set forth in the IAPA. Therefore, the Board's decision was not based on consideration of improper evidence, and it was neither beyond the Board's authority nor based on an erroneous interpretation of law. *See id.* § 17A.19(10)(b), (c).

### B. Substantial Evidence and Abuse of Discretion

Brewbaker asserts substantial evidence does not support the imposition of a one-year suspension, in addition to his thirteen-month interim suspension, and consequently, this sanction was arbitrary, capricious, and an abuse of discretion. He also claims substantial evidence, as defined in Iowa Code section 17A.19(10)(f), does not support a finding of harm to O.N., such that a charge of harassment was warranted. Brewbaker further argues the inclusion of additional requirements for readmission to ISU was an abuse of discretion.

■ We may reverse an agency's decision if we find that decision was not supported by substantial evidence, or was oth-

erwise arbitrary, capricious, and an abuse of discretion. *Id.* § 17A.19(10)(f), (n). Substantial evidence is defined as: "[T]he quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance." *Id.* § 17A.19(10)(f)(1). Our task is not to determine whether evidence might support a different finding, but whether the evidence supports the findings actually made. *Nelson,* 544 N.W.2d at 264.

■ In the imposition of a one-year suspension beyond the interim suspension, the ALJ stated he was initially inclined to impose a one-year suspension, but give Brewbaker credit for the interim suspension, thus shortening the sanction.

> However, after reviewing the entire administrative file, including all the e-mails that the Appellant sent to Ms. [N], the undersigned has decided that the Defined Length Suspension from the date of this Order until the end of the Spring Semester, 2011 is appropriate. The Appellant put Ms. [N] through hell during this episode. What is concerning is the Appellant's complete disregard or disconnect from the anguish he put Ms. [N] through. His e-mails are self-centered ramblings about his personal life, his love life, and his personal interactions with friends. All this came after Ms. [N] repeatedly asked him to only e-mail her about work-related matters.

President Geoffroy relied on this finding, as well as "[t]he fact that Brewbaker still seeks to remove the five-year no contact order."

Upon review of the record as a whole, including the emails sent to O.N., we agree with the district court substantial evidence

supports the Board's conclusions, and there was no abuse of discretion with regard to both the one-year additional suspension as well as the conditions for reentry to ISU. It was clear to the ALJ, the President, and the Board that Brewbaker's conduct warranted the additional year of suspension, because even after repeated warnings and requests to stop contacting O.N., Brewbaker continued his offensive behavior. As President Geoffroy found, the suspension was appropriate to "protect the victim, the broader ISU community and the educational environment."

Additionally, we note the conditions imposed upon Brewbaker for his reentry to ISU are similar to the conditions imposed upon all students seeking to return to ISU after a suspension, though they are tailored to his specific case.[6] Furthermore, the fact Brewbaker was convicted of harassment in district court is substantial evidence supporting the sanctions imposed by ISU, regardless of Brewbaker's characterization of his conduct as not "harming" O.N. Therefore, we agree with the district court the agency did not abuse its discretion under Iowa Code section 17A.19(10)(n) in imposing an additional one-year suspension, as well as additional conditions for reentry. We further agree that substantial evidence supports Brewbaker's sanctions for harassment.

Having considered all of Brewbaker's claims properly preserved for appeal, we affirm the decision of the district court in dismissing Brewbaker's petition for judicial review.

**AFFIRMED.**

---

**6.** The conditions imposed upon Brewbaker include working with the graduate program, meeting with the Dean of Students, discharging the sentence imposed by the district court, not communicating with either O.N. or Aluru, and not violating any laws or Student Disciplinary Regulations.