# IN THE COURT OF APPEALS OF IOWA

No. 20-0882
Filed September 23, 2020

**IN THE INTEREST OF N.M.,**
**Minor Child,**

**M.T., Mother,**
    Appellant,

**K.M., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Mahaska County, Rose Anne Mefford, District Associate Judge.

The mother and biological father of the child separately appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

Eric J. Palmer of Palmer Law Office, Oskaloosa, for appellant mother.

Patrick J. Mahaffey of Mahaffey Law Office, Montezuma, for appellant father.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Denise McKelvie Gonyea, Grinnell, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and May and Ahlers, JJ.

**AHLERS, Judge.**

N.M. was born in January 2019 and removed from the parents' care at the age of three months. Prior to removal, the child had been dropped at least twice, deprived of food to the point of being re-hospitalized, and otherwise largely ignored by the parents. Fast-forwarding approximately nine months after removal to the termination-of-parental-rights hearing, the child had never been returned to the care of the parents and the parents had not progressed past supervised visits. The juvenile court terminated the parental rights of the mother, the biological father, and the legally established father (the mother's husband). Only the mother and biological father appeal.[1]

Our review of a termination-of-parental-rights proceeding is de novo. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). On de novo review, we are not bound by the juvenile court's factual findings, but we 'give them weight, especially in assessing the credibility of witnesses.'" *Id.* (quoting *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014)).

Review of termination-of-parental-rights proceedings under Iowa Code chapter 232 (2019) follows a three-step analysis: (1) determine whether any ground for termination under section 232.116(1) has been established; (2) determine whether the best-interest-of-the-child framework set forth in section 232.116(2) supports termination of parental rights; and (3) "consider whether any

---

[1] Because the legally established father did not appeal, we have little need to address him in this opinion. When we refer to "the parents" in this ruling, we are referring to the mother and the biological father. When we refer to the legally-established father, we refer to him as such.

exceptions in section 232.116(3) apply to preclude termination of parental rights."

*In re M.W.*, 876 N.W.2d 212, 219–20 (Iowa 2016).

From what we can glean from the petitions on appeal,[2] the parents are challenging one element of the statutory grounds for termination (step 1) and the determination that termination is in the child's best interest (step 2). To the extent any other challenges were intended to be asserted, we deem the issues waived for failure to adequately identify or argue the issues. *See Soo Line R.R. Co. v. Iowa Dep't of Transp.*, 521 N.W.2d 685, 691 (Iowa 1994) (holding "random mention of an issue, without elaboration or supportive authority, is insufficient to raise the issue for" appellate consideration); *see also In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000) ("A broad, all encompassing argument is insufficient to identify error in cases of de novo review.").

The parental rights of both parents were terminated pursuant to Iowa Code section 232.116(1)(h), which requires proof of the following:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months,

---

[2] We express some uncertainty as to the issues presented because of the nature of the petitions filed. Each petition listed only one issue. However, either in the heading identifying the issue or in the body of the argument that followed, each party blended multiple concepts, causing uncertainty as to the issues the party desired us to address. We recognize the expedited time deadlines and truncated procedures for appeals in termination-of-parental-rights cases create challenges for the attorneys. *See In re C.M.*, 652 N.W.2d 204, 208–09 (Iowa 2002) (discussing the expedited procedure for termination appeals). We endeavor to accommodate the attorneys in light of those challenges by giving them the benefit of the doubt when determining the issues presented. Nevertheless, it would assist us, and decrease the likelihood of a misunderstanding as to the issues presented, if an appealing party separately identified and argued each issue presented, even if additionally identified issues involve arguing many of the same facts.

or for the last six consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The parents challenge only the fourth element, claiming the child could have been returned to their care at the time of the termination hearing. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting the statutory language "at the present time" to mean "at the time of the termination hearing"). However, neither parent points to any evidence that supports their claims. Instead, they argue they have been making some progress, are participating in most of the services offered, and should have been given more time to succeed. Consistent with their blending of issues in their petitions on appeal as mentioned earlier, this appears to be a blending of the arguments on the statutory grounds and best-interest issues.

As to the statutory grounds issue, the parents' argument does not advance their cause. Whether the parents were making progress or could have succeeded at some future time does not negate the juvenile court's determination that the child could not be returned to the care of either parent at the time of the termination hearing. In fact, it is an acknowledgment of the correctness of the juvenile court's finding. On our de novo review, we agree with the juvenile court that the child could not be returned to either parent at the time of the termination hearing, so the statutory grounds for termination were satisfied.

Turning to each parent's argument that termination of their respective rights is not in the child's best interest, we consider the parents' claims that they had done much of what had been asked of them and had made some progress, transportation issues caused by their lack of means formed the primary reason for

their shortcomings, and it is not in the child's best interest to "rush" termination. We find these arguments unpersuasive.

When evaluating whether termination is in a child's best interest, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). And "[i]t is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." In re P.L., 778 N.W.2d 33, 41 (Iowa 2010).

Contrary to the parents' assertions, this was not a "rush" to termination. "We have repeatedly followed the principle that the statutory time line must be followed and children should not be forced to wait for their parent to grow up." In re N.F., 579 N.W.2d 338, 341 (Iowa Ct. App. 1998). The parents were given more than the six-month time frame provided for in section 232.116(1)(h)(3) to participate in services and demonstrate the ability to parent without supervision. Neither parent has done that.

This child was repeatedly underfed and put in harm's way due to undernourishment while in the parents' care, even during a time when the parents were being intensely supervised and assisted. The parents did not implement suggestions for improved parenting, even on such basic ideas as properly clothing the child and keeping unnecessary items out of the child's crib. The parents developed no meaningful bond with the child, with the father frequently refusing to hold the child because he did not want to "spoil" her.

As for living arrangements, the house in which the parents lived at the beginning of the Iowa Department of Human Services (DHS) involvement was a scene of chaos, with multiple other adults, their children, and animals living in the home, generating a commensurate level of noise and animal filth. When the parents moved to get a "fresh start," they allowed the legally established father to live in the same house, even though the mother admitted knowing the legally established father was not suitable for being around the child because of mental-health and substance-abuse problems.

The police were called after the biological father made sexual comments to a ten-year-old child visiting the home, referencing the child's menstruation and his desire to watch pornography with her. The father has a previous child abuse assessment for sexual abuse.

Both parents have mental-health issues, which they have not addressed. They acknowledged having a plan to hide the child to keep the DHS from taking her.

In light of the above-described circumstances, the parents' claim that transportation issues stemming from their limited means are the root of their problems is far from persuasive. The parents have been given an abundance of services to assist them in improving their parenting but have been unable to demonstrate an ability to do so. This inability to do so was not caused by transportation limitations.

We agree with the juvenile court that termination of the parents' parental rights is in the child's best interest.

**AFFIRMED ON BOTH APPEALS.**