# IN THE COURT OF APPEALS OF IOWA

No. 20-1522
Filed January 21, 2021

**IN THE INTEREST OF M.W.-G.,**
**Minor Child,**

**A.J., Father,**
        Appellant.
_____

        Appeal from the Iowa District Court for Black Hawk County, David F. Staudt,

Judge.


        A father appeals the termination of his parental rights to his five-year-old

daughter.  **AFFIRMED.**


        Jamie L. Schroeder of The Sayer Law Group, P.C., Waterloo, for appellant

father.

        Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant

Attorney General, for appellee State.

        Tammy L. Banning of the Juvenile Public Defender's Office, Waterloo,

attorney and guardian ad litem for minor child.


        Considered by Vaitheswaran, P.J., and Tabor and Ahlers, JJ.

**TABOR, Judge.**

A father, Anthony, appeals the order terminating his legal relationship with his five-year-old daughter, M.W.-G. He contends the juvenile court was mistaken in finding the child could not be entrusted to his care under Iowa Code section 232.116(1)(f)(4) (2020). Because the State offered clear and convincing evidence that Anthony's criminal entanglements and drug usage prevented him from safely parenting M.W.-G., we affirm the termination order.[1]

### I.     Facts and Prior Proceedings

M.W.-G. was born in October 2015. She was not yet two years old when removed from her mother's care and adjudicated as a child in need of assistance (CINA).[2] Anthony did not enter the picture until July 2018. That's when the Iowa Department of Human Services (DHS) caseworker notified Anthony that he was possibly M.W.-G's father. Despite that notification, Anthony took no action until October 2019 when he attended a permanency hearing. Three months later, paternity testing confirmed he is M.W.-G.'s biological father.

---

[1] We review termination-of-parental-rights proceedings de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). The juvenile court's factual findings are not binding, but they deserve close consideration. *See In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). We will uphold a termination order if clear and convincing evidence supports at least one statutory ground. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Clear and convincing "is the highest evidentiary burden in civil cases. It means there must be no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence." *In re M.S.*, 889 N.W.2d 675, 679 (Iowa Ct. App. 2016). We impose this significant burden on the petitioning party "to minimize the risk of an erroneous deprivation of the parent's fundamental liberty interest" in raising his or her child. *Id.*

[2] "This family came to the attention of the department of human services in June 2017, due to concerns of drug use (K2 and marijuana) by the mother." *In re J.H.*, No. 20-0726, 2020 WL 4201238, at *1 (Iowa Ct. App. July 22, 2020).

After that confirmation, Anthony began visits with M.W.-G.[3] The visits went well—the child enjoyed his company, and they started to develop a bond. Hoping that Anthony could fulfill his parenting responsibility, the parties agreed to postpone permanency in his case.

But the State did not agree to a similar reprieve for M.W.-G.'s mother. The juvenile court moved forward with the termination of her parental rights. The court held a hearing in March and issued an order in May 2020 terminating the mother's rights to M.W.-G. and her three siblings. We affirmed that order. *J.H.*, 2020 WL 4201238, at *5.

Meanwhile, concerns about his drug use stalled Anthony's progress toward becoming a stable parent. In a July permanency review order, the juvenile court communicated its expectations:

> The only concern of the Court at this time is [Anthony's] sobriety. The Court does believe he has remained sober; however, he must continue to randomly drug test and potentially provide a hair stat test. The Court believes that [he] is fully capable of becoming [M.W.-G.'s] custodial parent if he remains sober. [Anthony] does have a significant history of substance use; however, he has allegedly remained sober since February. The Court does believe that he can continue to do so; however, objective proof will be necessary.

Anthony did not meet those expectations. As the court found, Anthony provided "five negative drug tests, failed to appear for eighteen tests, and tested positive three times for multiple drugs."

Anthony's poor record of drug testing coincided with a failure to attend many scheduled visitations. His inconsistency upset M.W.-G., who suffered trauma traceable to abuse by her mother. The caseworker explained that M.W.-G.

---

[3] Anthony's then-girlfriend, now wife, also participated in the visits.

"struggles a great deal when there isn't structure and consistency." To that end, Anthony "being in and then out so much is not good for her." That summer, the child acted out at daycare, including temper tantrums, throwing, kicking, and spitting. Seeing the toll on M.W.-G., in August her guardian ad litem (GAL) moved to "end deferment of permanency."

Then in September 2020, authorities issued a warrant for Anthony's arrest on charges of carrying weapons and being a felon in possession of a firearm. He engaged in the criminal conduct the previous January—just ten days after his release from a residential correctional facility. When the caseworker learned of the warrant, the DHS suspended interactions, reasoning that it would be harmful for M.W.-G. to witness her father being arrested at a visit. Yet Anthony did nothing to address the arrest warrant. In fact, he opted not to attend the October termination hearing because of the pending warrant.

About three weeks after the termination hearing, Anthony moved to reopen the record. The motion asserted that the State reduced his pending criminal charge to a lesser offense and he received a suspended jail sentence and probation. Anthony alleged that development should be considered in reaching a permanency decision for his child. The State and GAL resisted. The court denied his request to reopen the record.

In November 2020, the juvenile court issued its order terminating Anthony's parental rights. The court relied on Iowa Code section 232.116(1), paragraphs (e) and (f). The court observed: "[Anthony] valued his fleeting freedom while on flight from the law over opportunities to parent his child." Anthony now appeals.

**II.    Analysis**

Anthony challenges the sufficiency of the State's evidence under both paragraphs (e) and (f) of section 232.116(1). We may affirm on either ground. *See In re L.H.*, 949 N.W.2d 268, 270 (Iowa Ct. App. 2020). We choose to address paragraph (f). The juvenile court may terminate parental rights under this statutory alternative if the State establishes these elements:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Iowa Code § 232.116(1)(f).

Anthony only challenges the State's proof of the fourth element—that his daughter cannot be placed in his custody without exposing her to harm that would merit a new CINA adjudication. *See M.S.*, 889 N.W.2d at 680. He argues the juvenile court was wrong to tether its ruling to his arrest warrant. He admits having an active warrant on the day of the termination hearing but contends he was "working on resolving his outstanding legal matters." In fact, Anthony claims he did resolve those matters shortly after the trial. In passing, he argues the court should have granted his request to reopen the record to consider that resolution.[4]

---

[4] Because Anthony does not develop this argument or offer any authority for his position, we decline to address it. *See Soo Line R.R. v. Iowa Dep't of Transp.*, 521 N.W.2d 685, 689 (Iowa 1994) (holding random mention of issue without elaboration or supporting authority does not allow review).

We reject Anthony's claim for two reasons. First, Anthony allowed the uncertainty of his criminal liability to overshadow his efforts to reunite with his daughter. He avoided addressing the outstanding warrant and failed to appear for the termination hearing. The juvenile court was correct in deciding M.W.-G. could not be returned to her father "at the present time" under those conditions.[5] *See A.M.*, 843 N.W.2d at 111 (underscoring "present time" meant "time of the hearing").

Second, Anthony's outstanding arrest warrant was not the only reason for the termination of his rights. Another impediment to reunification was Anthony's history of substance abuse. His pattern of positive or skipped drug tests did not instill confidence in the juvenile court that he had addressed that issue. Likewise, his missed visits with his daughter were a key consideration for the juvenile court. Indeed it was because M.W.-G. so looked forward to those visits that she was crushed when Anthony did not show up. In the court's words: "She would become upset and regress into prior behaviors when disappointed by the father's failure to attend a visit."

After our de novo review, we affirm the juvenile court's order.

**AFFIRMED.**

---

[5] On one level, Anthony recognizes this reality. On appeal, he alternatively asserts the DHS should have placed M.W.-G. with his wife, who was willing to "provide for the child in the event he was absent from the home due to legal issues." Because the juvenile court did not rule on this issue, it is not properly before us. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).