# IN THE COURT OF APPEALS OF IOWA

No. 18-2078
Filed April 3, 2019

IN THE INTEREST OF H.E.,
Minor Child,

A.E., Mother,
        Appellant.

_____

        Appeal from the Iowa District Court for Cerro Gordo County, Adam D.

Sauer, District Associate Judge.

        The mother appeals the termination of her parental rights to her child.

**AFFIRMED.**

        Jane M. Wright, Forest City, for appellant.

        Thomas J. Miller, Attorney General, and John McCormally (until withdrawal)

and Anagha Dixit, Assistant Attorneys General, for appellee State.

        Crystal Leann Ely of McGuire Law Firm, Mason City, attorney and guardian

ad litem for minor child.

        Considered by Vaitheswaran, P.J., Doyle, J., and Blane, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**BLANE, Senior Judge.**

The mother appeals the termination of her parental rights to her child, H.E., born in April 2016.[1] The juvenile court terminated her rights pursuant to Iowa Code section 232.116(1)(e) and (h) (2018). The mother maintains the State failed to prove the grounds for termination by clear and convincing evidence, she should have been given additional time to work toward reunification, termination is not in the child's best interests, and the strength of the parent-child bond precludes termination.

We review termination proceedings de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). We begin by considering the statutory grounds. "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *Id.* at 774. We consider the grounds of section 232.116(1)(h), which allows the court to terminate parental rights if all of the following factors are met:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The mother challenges the fourth element—whether H.E. could be returned to her care at the time of the termination hearing. *See* Iowa Code § 232.116(1)(h)(4); *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting the term "at the present

---

[1] The father's parental rights were also terminated; he does not appeal.

time" to mean "at the time of the termination hearing"). She asserts the State failed to make reasonable efforts to reunify her with H.E. *See In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000) ("[T]he reasonable efforts requirement is not viewed as a strict substantive requirement of termination. Instead, the scope of the efforts by the [department of human services (DHS)] to reunify parent and child after removal impacts the burden of proving those elements of termination which require reunification efforts.").

The State has the burden to show it made reasonable efforts "as a part of its ultimate proof the child cannot be safely returned to the care of a parent." *Id.* But to preserve this issue for our review, the mother "had the obligation to demand other, different or additional services prior to the termination hearing." *In re S.R.*, 600 N.W.2d 63, 65 (Iowa Ct. App. 1999). In her appellate brief, the mother maintains she preserved the issue by filing a notice of appeal and by testimony at trial. Contrary to the mother's assertion, filing a notice of appeal does not preserve error. *See* Thomas A. Mayes & Anuradha Vaitheswaran, *Error Preservation in Civil Appeals in Iowa: Perspectives on Present Practice*, 55 Drake L. Rev. 39, 48 (2006) ("While this is a common statement in briefs, it is erroneous, for the notice of appeal has nothing to do with error preservation." (footnote omitted)). It is unclear what testimony from the termination trial the mother believes challenged the State's efforts at reunification. Moreover, even if we understood to which testimony she refers, the demand for different services must be made "prior to the termination hearing." *S.R.*, 600 N.W.2d at 65. The mother has not identified anything in the record to establish she informed the court prior to the termination

hearing that she wanted different or additional services.[2]  *See In re C.H.*, 652 N.W.2d 144, 147 (Iowa 2002) ("If, however, a parent is not satisfied with DHS' response to a request for other services, the parent must come to the court and present this challenge."); *see also* Iowa Code § 232.99(3) ("The court shall advise the parties that failure to identify a deficiency in services or to request additional services may preclude the party from challenging the sufficiency of the services in a termination of parent-child relationship proceeding.").  Finally, even if the mother had properly preserved her argument for our review, her claim in her appellate brief that "the State failed to prove its case by clear and convincing evidence as to DHS providing reasonable efforts to allow the Mother to resume care of the minor child" is too vague for our consideration.  The mother does not explain what other services she should have been provided or how the lack of receipt of those services affected her ability to be reunified with H.E.  *See C.B.*, 611 N.W.2d at 492 ("A broad, all encompassing argument is insufficient to identify error in cases of de novo review."); *Soo Line R.R Co. v. Iowa Dep't of Transp.*, 521 N.W.2d 685, 691 (Iowa 1994) (providing the "random mention of this issue, without elaboration or supportive authority, is insufficient to raise the issue for our consideration").

The mother also purports to challenge the district court's denial of her request for additional time to work toward reunification.  *See* Iowa Code § 232.104(2)(b) (allowing the court to delay permanency for an additional six

---

[2] In the juvenile court's April 9, 2018 dispositional order, the court states, "[T]he Court inquired about the adequacy of services provided to the family.  The following additional services were requested: mother would like parenting skills, transportation to evaluation on April 18, 2018, and assistance with [a housing] application & job seeking skills."  Later reports relate the mother's resistance to feedback regarding effective parenting skills and her refusal to participate in vocational rehabilitation.  We have not found any other request for services.

months if the court finds the need for removal will no longer exist at the end of the additional six-month period). The mother does not explain how the additional time will better enable her to parent H.E. safely, and she does not contest the court's finding that her lack of interest in services prevented her from progressing during the time between H.E.'s removal in January 2018 and the termination hearing in late October. The juvenile court determined H.E. could not be returned to the mother's care because:

> Mother completed a Psychological Evaluation on May 30 [and] was given a full scale IQ of 75, which placed her in the borderline range of intellectual functioning, and her prognosis for remediation of her parenting practices is poor. . . .
> Since January, mother has lived in at least eight different residences. She is currently living with her parents while she is trying to find an apartment. Mother is currently unemployed, and was most recently employed at Burger King in Ft. Dodge.
> [Family Safety, Risk, and Permanency (FSRP)] services began in January . . . and services have focused on budgeting, ages & stages, healthy relationships, and basic parenting skills. . . . Mother has a defensive attitude when working with her provider. Mother has two supervised visits per week, with visits lasting two hours. Mother has a difficult time interacting with the child during visits and likes to spend time on her phone. Visits have not progressed from supervised. . . . Mother has expressed no interest in other services, such as Workforce Development, Parent Partners, Integrated Home Health or Vocational Rehabilitation.
> Mother has not been able to demonstrate that she can meet the needs of the child. Mother has missed visits, declined many services, and has not made progress. Mother lacks stability, as evidenced by her unemployment and numerous residences.

While the mother appeared to achieve stable housing by moving in with her parents, other barriers to the mother's safe parenting of H.E. remained. We cannot say those barriers would no longer exist at the end of a short extension.

The mother maintains termination of her parental rights is not in H.E.'s best interests. *See* Iowa Code § 232.116(2) (requiring the court, in considering the best

interests of the child, to "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child"). Here, DHS became involved after the mother took H.E. to the hospital for a high fever. At the time he was admitted, H.E. was described as "filthy from head to toe," and his hands had injuries—possibly the result of burns—at varying stages of healing that the mother could not explain. Because of the mother's angry outbursts at medical personnel and concerns regarding her care of H.E., her interactions with H.E. were monitored during his multiple-day stay at the hospital. These interactions suggested the mother lacked basic parenting skills and protective capabilities; she had to be told not to throw H.E. into the crib, was seen throwing crackers in his crib in an effort to feed him, had to be told to check the temperature of food and to break it into small pieces before allowing H.E. to have it, and was often too focused on her phone or the television to notice when H.E. attempted something that could be dangerous. While he was in the hospital, doctors noted H.E. was "very significantly delayed in development." Deeper investigation into the family's circumstances revealed the mother was unemployed and did not have a residence of her own. The home where she and H.E. had been staying most recently was inappropriately dirty, with "thick piles of brown substance caked on the [kitchen] floor" and other dirty areas. Additionally, the refrigerator was not turned on and there was no food in it. The mother told hospital personnel she did not have money for diapers or food for H.E. H.E. was removed from the mother's care before his discharge from the hospital.

Between H.E.'s removal in January and the late October 2018 termination trial, the mother typically attended visits with H.E., and those visits were generally positive, although the mother was uninterested in and rebuffed direction by FSRP providers regarding her parenting. Outside of visits, the mother showed little progress. She continued to lack stability, living in eight or nine different places over the nine-month period. She was employed for only a few months during the pendency of the case and did not otherwise have any income. She participated in therapy only minimally and expressed she did so only because it was court-ordered, even though it was believed therapy would help the mother become less defensive and more open to necessary changes. We acknowledge the mother's level of intellectual functioning may play a role in her ability to take in new information and then put that information into practice—both with parenting skills and in other areas of her life. But when that level of intellectual functioning "is a contributing factor to [the mother's] inability to provide a safe and stable home for" the child, we cannot overlook it. *See D.W.*, 791 N.W.2d at 708; *In re Wardle*, 207 N.W.2d 554, 563 (Iowa 1973) ("Ordinarily, mental disability in a parent does not operate in a vacuum so far as the best interest and welfare of [the] child is concerned but is usually a contributing factor in a person's inability to perform the duties of parenthood according to the needs of [the] child."); *see also* Iowa Code § 232.116(2)(a) (allowing the court, when determining the best interests of the child, to consider "[w]hether the parent's ability to provide [for] the needs of the child is affected by the parent's mental capacity or mental condition").

In contrast, there was evidence H.E. flourished in the home of the foster family. While he was developmentally delayed in several areas when he was

removed from the mother's care, within two months of being cared for by the foster family, the Area Education Authority worker determined H.E. had caught up to all the age-appropriate milestones. H.E. remained in the same foster placement throughout the nine months he was removed from the mother, and the foster parents expressed interest in adopting him. *See* Iowa Code § 232.116(2)(b) (instructing the court to consider "whether the foster family is able and willing to permanently integrate the child into the foster family"). As the juvenile court recognized, "The foster home has been the only sense of stability and security that the child has experienced in his life."

We agree with the juvenile court that termination of the mother's parental rights is in H.E.'s best interests.

Finally, the mother maintains the juvenile court should have applied a permissive factor contained in section 232.116(3) to save the parent-child relationship. *See In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014) (providing the factors are permissive). She argues the termination of her parental rights would be detrimental to H.E. based on the closeness of the parent-child bond. *See* Iowa Code § 232.116(3)(c). In support of this claim, she maintains, "The State did not provide any evidence indicating termination would not in fact be detrimental to H.E." But it is the parent who has the burden—once the State has proved a statutory ground for termination and that it is in the child's best interests—to prove that one of the permissive factors precludes termination. *See In re A.S.*, 906 N.W.2d 467, 475–76 (Iowa 2018). We recognize the mother and H.E. share a bond, but the record does not establish termination would be detrimental to him or that the loss of the bond would overcome the disadvantages H.E. will face if the

mother's rights are not terminated. *See* Iowa Code § 232.116(3)(c); *D.W.*, 791 N.W.2d at 709.

We affirm the termination of the mother's parental rights.

**AFFIRMED.**