# IN THE COURT OF APPEALS OF IOWA

No. 19-0437
Filed June 19, 2019

**IN THE INTEREST OF A.W., J.W., J.W., J.W., and M.W.,**
**Minor Children,**

**S.W., Mother,**
        Appellant.

_____

        Appeal from the Iowa District Court for Polk County, Kimberly Ayotte,

District Associate Judge.

        A mother appeals the order terminating her parental rights to five children.

**AFFIRMED.**

        Elena M. Greenberg, Des Moines, for appellant mother.

        Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant

Attorney General, for appellee State.

        ConGarry Williams of Juvenile Public Defender, Des Moines, attorney and

guardian ad litem for minor children.

        Considered by Vaitheswaran, P.J., and Potterfield and Tabor, JJ.

**TABOR, Judge.**

Shauna appeals the order terminating her parental rights to five children: five-year-old Je.W., four-year-old twins Jo.W. and Ju.W., three-year-old A.W., and two-year-old M.W.[1] She contends she was denied due process and equal protection when the juvenile court refused her request for transcripts of prior proceedings. Next, she contends the State failed to prove the Iowa department of human services (DHS) made reasonable efforts toward reunification. She also alleges it is not in the children's best interests to terminate her rights. Finally, she asserts the court should have denied the petition to terminate based on the closeness of the parent-child relationship and the children being in a relative placement.

After our independent review,[2] we share the conclusions of the juvenile court and affirm termination.

I.      **Facts and Prior Proceedings**

In summer 2016, the DHS conducted two child-abuse investigations of Shauna, returning assessments finding she failed to provide adequate shelter, medical care, and supervision to her four young children. The DHS workers discovered the children in a filthy, pest-infested home with unexplained and untreated burn injuries. One child had several painful, rotting teeth, for which Shauna had not sought dental care. Two children were outdoors without

---

[1] The court also terminated the rights of the legal and putative fathers of all the children. They do not participate in this appeal.

[2] Our review is de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). We are not bound by the juvenile court's factual findings, but we give them weight, especially when witness credibility is critical to the outcome. *Id.* Proof must be clear and convincing, meaning there are no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).

supervision; Shauna had locked them in a room and they crawled out a window. The DHS removed the children and placed them with their maternal grandmother, Diane. At the time, Shauna was pregnant with the youngest child, M.W., who was removed from her care a few days after his birth.

Shauna was diagnosed with post-traumatic stress disorder and borderline intellectual functioning. She acknowledged a significant history of methamphetamine and alcohol use. Although she has seen a therapist, she has derived little benefit because her intellectual functioning makes it difficult for her to grasp abstract concepts. Her therapist reports her mental-health impairments significantly impact her ability to parent. She does not acknowledge the children's behavioral concerns, nor does she accept feedback on her parenting. She was unable to provide a clean and safe home environment for the children or obtain needed medical or mental-health care for herself or the children. She was homeless throughout the child-in-need-of-assistance (CINA) case, staying with friends.

The three oldest children display significant trauma-related difficulties: Je.W. has speech delays and attends psychotherapy to address her mental-health diagnosis of adjustment disorder. As part of the DHS case plan, Shauna was expected to participate in Je.W.'s therapy, but she had only limited involvement. In the six months before the termination hearing, Shauna did not attend and did not call to ask about Je.W.'s progress. The therapist opined Shauna disrupted Je.W.'s progress by threatening physical discipline and telling Je.W. she would return to living with Shauna. The therapist further reported Shauna's conduct "has left [Je.W.] in limbo and has affected her sense of safety."

In a similar vein, the therapist for Jo.W. and Ju.W. reported neither child is able to talk about their mother or their previous home life without "shutting down." They both display severe symptoms of emotional and behavioral dysregulation including anxiety, delays in motor and cognitive skills, physical aggression, inability to form positive relationships, inability to self-calm, and severe sleep disturbances. The therapist also reported disturbances from Shauna causing regression in their progress. The therapist stressed the twins' immediate need for a permanent caregiver and a minimization of disruptions to their living arrangements and routines. She strongly recommended the children remain in a stable home with Diane and not live with Shauna.

In June 2018, the court issued a review order changing the permanency goal to guardianship and appointing Diane as guardian. But the guardianship proved unsustainable. During visitation, Shauna was unable to abide by Diane's rules that she not spank the children, discuss inappropriate subjects with them, or bring inappropriate items.[3] Shauna once came accompanied by an unfamiliar man, until Diane asked him to leave. The Family Safety, Risk, and Permanency (FSRP) worker reported Shauna did not respect Diane's authority, and the children displayed troubling behaviors after seeing their mother.

The State petitioned to terminate Shauna's parental rights.[4] After hearings in February 2019, the court granted the petition under Iowa Code

---

[3] Shauna's cellphone was a particularly troublesome item—the children fought over it, and Shauna was unable to control their behaviors. But she kept bringing it and showing it to the children despite Diane's repeated requests she leave it out of sight.
[4] The children's attorney and guardian ad litem joined the request to terminate Shauna's rights.

section 232.116(1), paragraph (d) (2018) as to all the children; paragraph (h) as to A.W. and M.W.; and paragraph (f) as to Je.W., Jo.W., and Ju.W. Shauna appeals.

## II.    Analysis

### A.  Hearing Transcripts

Shauna first contends the juvenile court erred by not ordering transcripts be prepared for past review hearings and the reasonable-efforts hearing.

The court held a joint permanency-and-termination hearing on February 14 and February 26. Between those dates, on February 18, Shauna filed a written request for transcripts to be prepared at the State's expense for the review hearings held on March 9, July 26, September 27, and December 11, 2017. Shauna's counsel contends she sought the transcripts after learning the judge assigned to the CINA case would not be presiding over the termination hearing.[5] The newly assigned judge denied the request, reasoning "preparation of those transcripts is unduly burdensome and would cause unnecessary delay in the proceedings."

At the February 26 hearing, Shauna renewed her request for transcripts of the earlier hearings, or alternatively, just the transcript from the July 26, 2017, reasonable-efforts hearing, explaining,

> DHS has submitted a report that shows a lengthy list of efforts. In that hearing, we went back and forth with that DHS worker about which ones were actually provided and which ones were just listed

---

[5] Shauna also expresses concern that five different DHS workers and several different FSRP workers were assigned to her case between October 2016 and February 2019. But her passing attention to that turnover does not preserve it as an issue for our review. *Soo Line R.R. Co. v. Iowa Dep't of Transp.*, 521 N.W.2d 685, 691 (Iowa 1994) (finding a party's random mention of an issue without elaboration or supportive authority was insufficient to raise an issue for the court's consideration).

or aspirational, and I think that would be informative to the [c]ourt, and, of course, we don't have that same DHS worker with us today.

The new judge denied the request, stating,

I have had the opportunity to review the findings that the [c]ourt has made regarding reasonable efforts, where the [c]ourt had concerns about reasonable efforts being made with respect to this case, as well as an opportunity to review the efforts that have been made by the Department of Human Services and the [c]ourt's most recent finding that reasonable efforts have been made.
    . . . I don't think the information contained in the transcripts is necessary in order for me to be able to make an appropriate decision about how to move forward with this termination or permanency hearing.

On appeal, Shauna suggests when the juvenile court took judicial notice of the CINA file, the information was incomplete and that incompleteness favored the State because any cross-examination of the previous case workers at the review hearings was excluded from the court's review. Shauna argued because the State did not call the previous workers to testify at the termination hearing, she did not have a chance to impeach them. She contends this situation denied her due process and equal protection under the state and federal constitutions because a parent who was not indigent could have ordered the transcripts at her own expense.

We find no constitutional deprivation in the court's denial of Shauna's request for transcription of the earlier hearings. Her indigency was not the reason the transcripts were unavailable, so her claim of disparate treatment falls short. *See King v. State*, 818 N.W.2d 1, 24 (Iowa 2012) ("To allege a viable equal protection claim, plaintiffs must allege that the defendants are treating similarly situated persons differently."). Instead, the juvenile court found obtaining the

transcripts would cause unnecessary delay. Shauna's request came after the first hearing date, despite having notice of the State's witnesses and exhibits.

Significantly, Shauna did not subpoena the witnesses she claims she could not cross-examine. At the second hearing date, upon renewing her request, the court found it did not need the transcripts to reach a decision because it already had the court's earlier findings on reasonable efforts and had taken judicial notice of the CINA files. We agree the transcripts would not have added anything to the record justifying a delay in permanency for the children. *See In re M.D.*, 921 N.W.2d 229, 233 (Iowa 2018) (explaining procedural due process in child-welfare case involves "careful balancing of the personal interest of litigants, the ability of the court system to accommodate and provide safeguards for litigants, and the broad interests of the government to both provide safeguards and protect the interests of all").

To the extent Shauna argues her inability to cross-examine the previous DHS workers violated the confrontation clause, our supreme court has determined that Sixth Amendment right does not apply to child-welfare proceedings. *See In re E.H. III*, 578 N.W.2d 243, 246 (Iowa 1998).

**B. Reasonable Efforts**

Shauna's only challenge to the substantive grounds for termination comes in the form of a reasonable-efforts argument. Under Iowa Code section 232.102(7), the DHS is required to "make every reasonable effort" to return children to their parents' care "as quickly as possible" consistent with the children's best interests. *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). The reasonable-efforts requirement is not "a strict substantive requirement of termination." *Id.* But

when relying on paragraphs (f) and (h) as the grounds for termination, the State must show the DHS made reasonable efforts toward reunification as part of its ultimate burden of proof. *See In re L.T.*, 924 N.W.2d 521, 527 (Iowa 2019). We focus on the services provided and the parent's response. *C.B.*, 611 N.W.2d at 494.

In July 2017, Shauna filed a motion for reasonable efforts, complaining the DHS reduced her visitations contrary to the court's order. She also complained the DHS had not offered parenting instruction or services tailored to her borderline-intellectual functioning. To address Shauna's concerns, the court ordered the DHS to offer visits in a setting conducive to parenting instruction, rather than the public places they were previously held. In October 2017, the court found DHS corrected the earlier deficiencies; Shauna did not challenge this conclusion or renew her complaint before the termination hearing.

At review hearings in December 2017, March 2018, and June 2018, Shauna either requested and was granted different services, or reported she had no request for additional services. If Shauna remained concerned about the services fitting her intellectual disability, she needed to alert the DHS again. Without a renewed request, we cannot consider her complaint on appeal. *See In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002) ("[I]f a parent fails to request other services at the proper time, the parent waives the issue and may not later challenge it at the termination proceeding.").

Even if Shauna's claim was preserved, the record reveals she was offered many services during the CINA case. Often, she either failed to engage or derived little benefit from the services, including additional parenting resources and

visitation. Her inappropriate behavior during visitations unsettled the children and made the guardianship untenable. *See L.T.*, 924 N.W.2d at 528 ("[T]he interests of the child[ren] take precedence over family reunification."). The DHS made reasonable efforts in this case.

## C. Best Interests

Next, Shauna argues it is not in the best interests of the children to terminate her rights. In making the best-interests determination, we give primary consideration to the children's safety, the best placement for furthering their long-term nurturing and growth, as well as their physical, mental, and emotional condition and needs. *In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010). Safety and the need for a permanent home mark the "defining elements in a child's best interest." *In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially).

Shauna has never obtained stable housing or achieved a level of mental health that would enable her to safely parent these five children. Even while placed with Diane, the children's lives were disrupted by Shauna's behavior. The older children have spent more than two years out of Shauna's care, and their therapists agree they need a permanent home. The younger children have spent most or all of their lives out of Shauna's care. The children thrive in Diane's care—she is able to handle both their basic and higher-level needs. Their long-term best interests are served by terminating Shauna's parental rights.

## D. Factors Weighing Against Termination

Finally, Shauna claims the court incorrectly concluded neither the relative guardianship nor the strong parent-child bond stood in the way of terminating her rights. *See* Iowa Code § 232.116(3)(a), (c). The facts are not on Shauna's side.

The older children have resisted time with Shauna, and the younger children have been out of her care most or all their lives.  Because the record reveals no bond to preserve, termination would not be detrimental to the children.  Neither does relative placement weigh against termination.  The guardianship failed because Shauna could not provide appropriate care even under Diane's supervision.  No statutory factor precludes termination.

**AFFIRMED.**