## IN THE COURT OF APPEALS OF IOWA

No. 20-1044
Filed November 4, 2020

IN THE INTEREST OF R.B. and R.B.,
Minor Children,

K.B., Mother,
        Appellant,

J.B., Father,
        Appellant.

_____

Appeal from the Iowa District Court for Benton County, Cynthia S. Finley, District Associate Judge.

A mother and father appeal the juvenile court order terminating their parental rights to their two children. **AFFIRMED ON BOTH APPEALS.**

Robert W. Davison, Cedar Rapids, for appellant mother.

Ray Lough, Vinton, for appellant father.

Thomas J. Miller, Attorney General, and Toby J. Gordon, Assistant Attorney General, for appellee State.

Mark D. Fisher of Howes Law Firm, P.C., Cedar Rapids, attorney and guardian ad litem for minor children.

Considered by Doyle, P.J., and Tabor and Ahlers, JJ.

**AHLERS, Judge.**

The mother and father appeal the juvenile court's order terminating their parental rights to their two minor children, R.B. and R.B. The juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(g) (2020), and the father's parental rights under Iowa Code section 232.116(1)(g) and (h). On appeal, the parents argue the State did not meet its burden to show the statutory grounds were present and termination was not in the children's best interests.

## I.      Background

These twin children were between one and two years of age when they first came to the attention of the Iowa Department of Human Services (DHS) following allegations the parents had been using methamphetamine in the children's presence.[1] While hospitalized in relation to an infection, the father tested positive for methamphetamine. Subsequent testing of the mother and twins revealed all three were positive for methamphetamine.

A child-in-need-of-assistance (CINA) proceeding was started. The parents agreed to a case plan in which they would complete substance-abuse evaluations, submit to random drug screenings, and otherwise cooperate with DHS and family safety, risk, and permanency (FSRP) services. Due to ongoing drug use and a history of domestic violence, the father was not allowed to supervise the children alone. The mother and children moved in with the children's maternal

---

[1] While DHS attention was not called to these children any earlier, the family was well-known to the DHS, as the parents' parental rights to an older sibling of these children had been terminated just three months before the twins' births.

grandmother. The mother was not to have contact with the father due to his continued drug usage and his propensity for violence.

After moving in with the children's maternal grandmother, the mother again tested positive for methamphetamine and amphetamines. The father continued to test positive for illegal drugs as well. In addition, the mother repeatedly informed the DHS she was no longer in contact with the father. However, the DHS workers discovered the mother had not been truthful. The father had been living in a van in the parking lot outside the mother's home and was having regular contact with the mother and the children. The children were removed from the mother's care and placed with a foster family.

Over the next year and a half, the mother reported progress. The mother returned negative drug test results and maintained steady employment and housing. She eventually progressed toward reduced supervision and overnight visits with the children and regained custody of the children in August 2019. The father, on the other hand, did not make the progress expected by the DHS. He briefly attended inpatient treatment for substance abuse, but he did not stay in the program. He was still actively using methamphetamine and marijuana throughout this same period. He did not have stable housing. The father was not addressing his mental health in a consistent manner and was at one point hospitalized due to mental-health concerns. Custody was not returned to him when it was returned to the mother.

The mother and the children moved out of the maternal grandmother's home in November 2019. At first, in-home placement went well, with the mother maintaining sobriety and consistent employment. The mother denied having any

contact with the father and, in December, conveyed she wanted to divorce him. However, in April 2020, the DHS workers learned that, once again, the mother had been deceiving them for months. This deceit came to light when the police were called to the mother's home in response to a disturbance involving the father. Police were informed the father had a firearm and was threatening to shoot people. Police arrived and arrested the father. The father resisted arrest and began banging his head against the door and cage of the squad car once he was taken into custody. The father spit on the officers and informed them he had COVID-19. The mother told the officers that the children were not present. This too turned out to be a lie, as the officers searched the apartment and found both children inside. The officers also found drug paraphernalia and a firearm, which the mother later admitted she had bought for the father. In contrast to what she had been telling the DHS workers, the mother informed the officers that she and the father were trying to work on their relationship, and had been in communication for some time. She later admitted the father had been living with her and the children. A neighbor reported to the police that the mother and father had been together for several months, as they had been heard arguing very loudly during those months.

As a result of the discovery of the mother's deceit and the danger to the children during the April 2020 incident, the juvenile court again ordered the children's removal from the mother's custody. The children were taken to a medical examination, where one child was found to have a skin condition caused by improper hygiene. The children were both administered a drug test at the medical appointment, and both tested positive for methamphetamine and marijuana.

Following the removal in April 2020, the mother resumed her drug usage, resulting in a positive test for methamphetamine and THC shortly after the children's removal. As a result of these developments, the State filed the present petition to terminate the parents' rights to the children. Following a hearing, the juvenile court terminated both parents' rights to both children, concluding the parents are unable to address the substance-abuse, mental-health, and relationship issues that have been present since 2018. The parents separately appealed.

## II.    Standard of Review

We review termination proceedings de novo. *In re Z.P.*, 948 N.W.2d 518, 522 (Iowa 2020) (per curiam). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* at 522–23 (quoting *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014)).

## III.    Discussion

We review termination proceedings using a three-step analysis. *In re A.R.*, 932 N.W.2d 588, 591 (Iowa 2019).

> First, the juvenile court must decide if the State proved one of the enumerated grounds in section 232.116(1). Second, the court must consider if termination is in the best interests of the children by applying the factors in section 232.116(2). Third, if the factors require termination, the court must see if any circumstances in section 232.116(3) compel it to forego termination. "The factors weighing against termination in section 232.116(3) are permissive, not mandatory."

*Id.* (citations omitted).

## A.   Statutory Grounds

The juvenile court terminated the father's parental rights to the children under Iowa Code section 232.116(1)(h) and both parents' rights under section 232.116(1)(g). "On appeal, we may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010).

We first turn to the parents' arguments as they relate to Iowa Code section 232.116(1)(g), which requires proof of the following:

> (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (2) The court has terminated parental rights pursuant to section 232.117 with respect to another child who is a member of the same family or a court of competent jurisdiction in another state has entered an order involuntarily terminating parental rights with respect to another child who is a member of the same family.
> (3) There is clear and convincing evidence that the parent continues to lack the ability or willingness to respond to services which would correct the situation.
> (4) There is clear and convincing evidence that an additional period of rehabilitation would not correct the situation.

### 1.   The Mother's Claims.

The mother argues the State has not met its burden under subsection (g). In doing so, she does not identify which provision of subsection (g) she disputes, only generally referring to the record in support of her argument.  While she arguably has waived this challenge, from her recitation of the facts, we surmise she is challenging elements (3) and (4).

We find the mother's claims unpersuasive.  While the mother points to long periods of time during which the children were in her care, she ignores the fact that she had the children in her care because she had intentionally deceived the DHS

about her ongoing relationship with the abusive and drug-addled father who was not to be around the children. The juvenile court accurately summarized this issue as follows:

> Unfortunately, in retrospect, it is now clear that during approximately one half that time she had allowed herself to resume a relationship with [the father], resume use of illegal substances, and expose her children to domestic violence and illegal substances. She managed to hide this from providers so successfully that the Department of Human Services was ready to recommend dismissal of the case in April 2020 until [the mother's] deception was discovered. Clearly, she has no protective capacity in the long-term to keep her children safe. This lack of protective capacity is clearly demonstrated in [the mother's] continuing to reunite with [the father] when she knows doing so generally results in the loss of her sobriety and violence between the two of them, exposing her children to both controlled substances and domestic violence in the home. It is shockingly demonstrated in actions such as [the mother] buying a firearm for [the father], who as a felon cannot legally possess it. Especially with her knowledge of his propensity for violence, substance abuse and poor mental health. Her lack of insight into the dangers of such an action is inconceivable after well over 2 years of services to address these issues.

Additionally, the mother has regularly returned to illegal drug usage, including exposing the children to drug use to the extent the children tested positive for illegal drugs as well, and has generally demonstrated an inability or unwillingness to be a viable placement option. Even after having the children removed for the last time, the mother switched to intravenous methamphetamine use and dropped out of a treatment program before completing it. Under these circumstances, we find clear and convincing evidence that the mother continues to lack the ability or willingness to respond to services which would correct the situation that led to the children's removal and an additional period of rehabilitation would not correct the situation. Therefore, the statutory grounds for termination of

the mother's parental rights pursuant to Iowa Code section 232.116(1)(g) have been established.

## 2. The Father's Claims.

The father makes a number of arguments in support of his challenge to the termination of his rights pursuant to Iowa Code section 232.116(1)(g). His arguments center on lack of reasonable efforts and claims that section 232.116(1)(g) is unconstitutional because it does not specifically require a showing of reasonable efforts.

We will start with the father's constitutional argument. We find both a failure to preserve error on this issue and a waiver of the issue. As to error preservation, the father does not point to any place in the record where this issue was brought to the attention of the juvenile court, and we cannot find any such reference in our review. "[T]he general rule that appellate arguments must first be raised in the trial court applies to CINA and termination of parental rights cases." *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *State v. Bynum*, 937 N.W.2d 319, 324 (Iowa 2020) (quoting *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002)). "This doctrine applies with equal force to constitutional issues." *Id.* (citations omitted). Even if the father properly raised a constitutional issue during the juvenile court proceedings, the juvenile court did not rule on that issue. The father's failure to file a motion pursuant to Iowa Rule of Civil Procedure 1.904(2) calling the claimed oversight to the juvenile court's attention and giving the juvenile court the

opportunity to rule on it is a failure to preserve error for our review. *See Meier*, 641 N.W.2d at 537.

In addition to the failure to preserve error, in his petition on appeal, the father fails to identify which constitutional provisions were violated (by name or citation) and fails to cite any authority in support of his claim. Therefore, even if error had been preserved, the father has waived any constitutional challenges. *See Soo Line R.R. Co. v. Iowa Dep't of Transp.*, 521 N.W.2d 685, 691 (Iowa 1994) (holding mention of an issue, without elaboration or supportive authority, is insufficient to raise the issue for appellate consideration).

Turning to the father's claim he was not provided reasonable efforts, we first note that the father has not preserved error on this issue either. A parent must raise a challenge to the juvenile court about the adequacy of services "at the removal, when the case permanency plan is entered, or at later review hearings." *In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002). Requests for different or additional services must be made to the juvenile court because "voicing complaints regarding the adequacy of services to a social worker is not sufficient." *Id.* The children have been removed from the father's care since October 2018, yet the father is unable to point to any place in the record where he raised this issue prior to the termination hearing. *See id.* (holding that a parent who does not raise reasonable-efforts arguments at the proper time waives the issue and may not later challenge it at the termination proceeding).

Even if we bypass the error-preservation issue, the father's argument lacks merit. As our supreme court has explained:

> [T]he reasonable efforts requirement is not viewed as a strict substantive requirement of termination. Instead, the scope of the efforts by the DHS to reunify parent and child after removal impacts the burden of proving those elements of termination which require reunification efforts. The State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent.

*In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000) (citation omitted).

As the juvenile court noted in the termination order, the father has been offered many services for over two years, including "parent partners, parenting instruction, daycare assistance, Waypoint domestic violence services, AEA services, substance abuse evaluation and treatment, drug testing, mental health evaluation and treatment, supervised visitation, services through the Department of Human Services, FSRP services, Family Team Meetings, and methadone clinic services." The juvenile court also noted neither parent requested additional services at any point during these proceedings, and on appeal the father does not identify any services that would have been beneficial to him but were not offered. Instead, he merely stated that, due to the COVID-19 pandemic, he "was essentially homeless and unable to enter into substance abuse treatment." While DHS "has an obligation to make reasonable efforts toward reunification, . . . a parent has an equal obligation to demand other, different, or additional services prior to a permanency or termination hearing." *In re A.A.G.*, 708 N.W.2d 85, 90 (Iowa Ct. App. 2005). Because the father did not object to the services offered to him or request additional or different services, he cannot now complain the State did not make reasonable efforts. *See id.*

Furthermore, contrary to the father's assertions, the services that were provided to him in an effort to help him become a viable placement option did not

stop at any time.  In spite of the plethora of services provided for over two years, there was no persuasive evidence the father had made any significant improvement in his ability to parent.  The father continued to exhibit anger issues, as demonstrated by the April 2020 incidents and his blurting out inappropriate, sexist, and derogatory comments directed at the juvenile court during the course of the termination hearing.  In addition, the father admitted during the termination hearing that he had last used methamphetamine within a day or two of the hearing. Under these circumstances, we find reasonable efforts were expended on the father without success and the statutory grounds for termination pursuant to Iowa Code section 232.116(1)(g) were established.  Due to our conclusion grounds for termination under section 232.116(1)(g) were established, we need not address the father's claims the requirements for termination under section 232.116(1)(h) were not met.  *See  A.B.*, 815 N.W.2d at 774 ("When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record.").

## B. Best Interests

We next consider whether termination is in the children's best interests.  In this inquiry, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]."  Iowa Code § 232.116(2).  "[I]t is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to

provide a stable home for the child." *In re A.S.*, 906 N.W.2d 467, 474 (Iowa 2018) (quoting *A.M.*, 843 N.W.2d at 112).

Only the mother challenges the juvenile court's best-interests finding on appeal. She argues termination is not in the children's best interests due to the strong bond between them, and instead of termination, she should be given more time to work toward reunification. We disagree. The children have been in and out of relative and foster care placement for over two years. Over that time, the mother has gone through periods of success with substance-abuse treatment, and has recently begun to appropriately address her mental health. But these positive signs do not outweigh the mother's inability to separate herself from the father or sustain an acceptable level of parenting for a prolonged period of time. She appears to be aware of how dangerous and destructive her relationship with the father is, as evidenced by her months-long efforts to hide her relationship with the father from the DHS, but cannot make a final break from him. This relationship led to the children testing positive for methamphetamine and marijuana, and exposed the children to violence and a dangerous weapon. Testimony at the termination hearing shows the children continue to suffer from trauma, including night terrors and fear of loud noises. After years of services, the same problems that led to the children's removal remain a present concern. The children are very young, and need a stable and nurturing home. On our review of the record, we believe termination is the children's best opportunity to find such a home.

**AFFIRMED ON BOTH APPEALS.**