# IN THE COURT OF APPEALS OF IOWA

No. 19-0887
Filed August 7, 2019

**IN THE INTEREST OF P.K.,**
**Minor Child,**

**J.K., Father,**
       Appellant,

**J.T., Mother,**
       Appellant.
_____

Appeal from the Iowa District Court for Clayton County, Linnea M.N. Nicol, District Associate Judge.

A mother and father separately appeal the termination of their parental rights to their five-year-old daughter. **AFFIRMED ON BOTH APPEALS.**

Cory R. Gonzales of Law Office of Cory R. Gonzales PLLC, Strawberry Point, for appellant father.

John J. Sullivan of Sullivan Law Office, P.C., Oelwein, for appellant mother.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant Attorney General, for appellee State.

Mary Beth A. Fleming, Dubuque, attorney and guardian ad litem for minor child.

Considered by Tabor, P.J., and Mullins and May, JJ.

**TABOR, Presiding Judge.**

Jennifer and John separately appeal the termination of their parental rights to five-year-old P.K. They contend the State did not offer clear and convincing evidence of the statutory grounds for termination; termination is not in P.K.'s best interests; and termination would be detrimental to P.K. because of the parent-child bond. After an independent review of the record,[1] we affirm.

## I. Facts and Prior Proceedings

John assaulted Jennifer in the presence of their children, P.K., and her younger sister, A.K. The Iowa Department of Human Services (DHS) also received reports the parents were using methamphetamine while caring for the children. In a child-abuse assessment, the DHS determined both parents were responsible for a failure to properly supervise the children and for the presence of illegal drugs when A.K.'s hair sample tested positive for methamphetamine. During the assessment, Jennifer admitted using methamphetamine "once in a while" and within thirty days of the assault. Afterward, Jennifer denied both that she ever used drugs and that she ever admitted to using drugs. For his part, John has a long history of abusing drugs, especially methamphetamine. The DHS removed the children and placed them in the same foster home, where they have remained throughout these proceedings.

---

[1] Our review is de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). We are not bound by the juvenile court's factual findings, but we give them weight, especially when witness credibility is critical to the outcome. *Id.* Proof must be clear and convincing, meaning there are no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).

The juvenile court adjudicated then three-year-old P.K. and five-month-old A.K. as children in need of assistance (CINA). The adjudication rested on the parents' failure to exercise a reasonable degree of supervision and because the parents' drug abuse resulted in the children not receiving adequate care. *See* Iowa Code § 232.2(6)(c)(2), (n) (2017). The case permanency plan required both parents to (1) obtain substance-abuse evaluations and follow treatment recommendations; (2) obtain mental-health evaluations and follow treatment recommendations; (3) submit to random drug testing; and (4) attend Family Safety, Risk, and Permanency (FSRP) sessions focusing on parenting skills, budgeting, and relapse prevention.

From the outset, Jennifer had trouble cooperating with the DHS and service providers. She was routinely combative, hostile, and verbally abusive to the FSRP worker assigned to her case. She lashed out both in person and over phone, email, and text, including while in the presence of the children. At times she was aggressive and threatening. For instance, during one visitation, the FSRP worker called law enforcement because Jennifer was yelling swear words and threatening to kill herself—in front of the children. Visitation remained fully supervised, and Jennifer missed or was late to many interactions, especially toward the end of the case.

As part of the recommended services, Jennifer attended a joint mental-health and substance-abuse evaluation. The therapist diagnosed her with adjustment disorder with anxiety and depressed mood and recommended individual mental-health counselling. But the therapist found Jennifer had no drug or alcohol-abuse problem, thus offering no recommendations for substance-abuse

treatment. The DHS caseworker testified Jennifer did not report her history of drug abuse to the therapist.

Even so, DHS and FSRP workers often noted signs of ongoing drug use: Jennifer attended visitations with sores on her face and arms, appeared disheveled, and was emotionally unstable. Once, she fell asleep. The court repeatedly ordered Jennifer to obtain another substance-abuse evaluation, but Jennifer never did so. Jennifer also refused to participate in drug testing. In October 2017, March 2018, and December 2018, she attended tests she scheduled for herself, and each one was negative for drugs. But, over twenty-one months and forty-four randomly scheduled tests, she appeared for only four. Three of those four times, she refused to give a hair sample. On the fourth appearance, she reported the sweat patch applied to detect drug use fell off before a result could be obtained.

On top of her failure to address her substance abuse, Jennifer never completed the recommended mental-health counselling. The juvenile court also ordered her to seek help with anger management, but she did not. Although the court ordered Jennifer to participate in FSRP "skill-based" sessions along with visitation, she attended only thirteen of fifty-seven offered sessions.

Like Jennifer, John participated in the FSRP "skill-based" sessions only sporadically, but he appeared receptive when he did attend. John was more cooperative than Jennifer with the DHS and FSRP workers. He acted appropriately during their interactions. But he also refused to engage in regular drug testing. Out of twenty-eight offered tests, John attended only one, where his sweat patch tested positive for methamphetamine. John did not complete ordered

substance-abuse treatment. He has been in and out of jail during these proceedings. In November 2018, John was arrested on federal firearms charges and placed in the Linn County jail, where he remained through the termination hearings. Jail policy prohibited visitation with children under sixteen. John testified he had been sober since his arrest.

In October 2018, the juvenile court terminated both Jennifer's and John's parental rights to their younger child, A.K. After this development, Jennifer's commitment to visiting her older daughter deteriorated. Jennifer missed more than half of the offered visits.[2] John was incarcerated and denied visits in the jail.

Two months later, the State petitioned to terminate parental rights to P.K. At the hearing, the FSRP worker testified that while P.K. retains a bond with both Jennifer and John, the child has been harmed by Jennifer's inappropriate comments and erratic behavior. The worker highlighted P.K.'s loving relationship with her foster parents, to whom she turns for comfort and support. The record showed P.K. was thriving in their home, alongside her younger sister.

The juvenile court terminated Jennifer and John's parental rights under Iowa Code section 232.116(1)(e), (f), and (g). The court specifically found Jennifer was not credible, explaining, when Jennifer is angry, "she cannot be reasoned with, nor can she answer questions thoughtfully"; her "denials are complete and without

---

[2] In November 2018, the juvenile court dismissed a petition to terminate parental rights under Iowa Code section 232.116(1), paragraph (e) (2018), for failure to maintain meaningful and significant contact. The court found the State failed to show the parents had made no reasonable effort to resume care of P.K.: "While the parents' efforts have not been sufficient to remedy the fear of adjudicatory harm if the children were returned to their care, the parents have made some efforts to regain the custody of [P.K.]"

exception"; and her complaints were pulled "out of thin air despite overwhelming evidence to the contrary."

Jennifer and John each filed petitions on appeal.

## II.    Statutory Grounds

When the juvenile court terminates parental rights on more than one ground, "we need only find termination appropriate under one of these sections to affirm." *In re J.B.L.*, 844 N.W.2d 703, 704 (Iowa Ct. App. 2014).  We focus on section 232.116(1)(f).  That paragraph requires proof of four elements: (1) the child must be at least four years old; (2) the child must have been adjudicated in need of assistance; (3) the child must have been removed from the home for at least twelve of the last eighteen months, or for the last twelve consecutive months with any period at home being less than thirty days; and (4) the child cannot be returned to the home as provided in section 232.102 at the present time.  John contends he has alleviated the danger of harm, so he can resume care of P.K., but he also acknowledges he is currently incarcerated.[3]  Jennifer likewise contends P.K. can be returned to her care.

The record disproves the parents' contentions.  The DHS caseworker gave both parents what she called "refrigerator lists" to help them understand the case expectations and work toward reunification with P.K.  The lists were fairly short with clear goals for the parents.  Yet Jennifer and John showed little progress.  For

---

[3] John contends he will be released in six months; but he cannot resume custody of P.K. at the present time, even if he had complied with the other case requirements.  *See D.W.*, 791 N.W.2d at 707 (interpreting statutory language "at the present time" to mean the time of the termination hearing).

instance, neither parent completed the required substance-abuse treatment or demonstrated their sobriety sufficiently to erase the concerns of the CINA proceedings.

Especially worrisome was the parents' refusal to participate in random drug testing. Their recalcitrance undermines their claims they can resume custody now. The parents routinely made excuses for missing tests—claiming service providers did not notify them or offer transportation assistance. Their excuses did not withstand scrutiny. Jennifer did submit three clean drug tests, but she scheduled them at her convenience. We are more persuaded by the dozens of tests she skipped, combined with the social worker's observations of her conduct and physical condition during visitations. Even when Jennifer appeared for testing, she did not submit samples. When John did provide one sample, it tested positive for methamphetamine.

Domestic violence first brought this family to DHS attention, but it was the parents' admission of drug use and the presence of methamphetamine in A.K.'s system that animated the continuing need for removal. The parents' failure to embrace services that would address issues of substance abuse and mental health left P.K.'s future in a precarious position. At the time of the termination order, P.K. had been out of her parents' care for nearly two years.

We agree with the juvenile court's conclusion neither John nor Jennifer can resume care of P.K. at the present time. The State met the statutory grounds for termination for both parents.

## III.    Best Interests

Next, Jennifer and John argue it is not in P.K.'s best interests to terminate their rights.    In making the best-interests determination, we give primary consideration to the child's safety, the best placement for furthering her long-term nurturing and growth, as well as her physical, mental, and emotional condition and needs.  Iowa Code § 232.116(2); *In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010).  That consideration may include a child's integration into her foster family and whether the foster family is willing to adopt.  *See* Iowa Code § 232.116(2)(b).  Safety and the need for a permanent home mark the "defining elements in a child's best interest."  *In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially).

Waiting to see if John and Jennifer can become stable, drug-free parents is not in P.K.'s best interests.  As the juvenile court found, John was unavailable and "refused to participate in random drug testing and services designed to return the child to his care."  Likewise, Jennifer was "unwilling to work through the case plan." P.K. has been with the same foster parents for nearly two years.  She is thriving in their care and looks to them for the stability her parents could not provide.  The record shows by clear and convincing evidence that termination serves her best interests.

## IV.    Closeness of Parent-Child Relationship

Jennifer and John also allege termination would be detrimental to P.K. because of the closeness of the parent-child relationship.  *See* Iowa Code § 232.116(3)(c).  The evidence shows P.K. does share a bond with Jennifer and John and enjoys visitation.  But the record does not suggest their relationship is so

close that termination would be detrimental to P.K. During the nearly two years outside of her parents' care, she has developed a strong bond with her foster parents. *See D.W.*, 791 N.W.2d at 709. Section 232.116(3)(c) does not stand in the way of termination.[4] We affirm the juvenile court order.

**AFFIRMED ON BOTH APPEALS.**

---

[4] Jennifer and John mention they should have been given additional time to work toward reunification. This passing comment does not preserve the request for our review, even if we assume they raised the point in the juvenile court. *See Soo Line R.R. Co. v. Iowa Dep't of Transp.*, 521 N.W.2d 685, 691 (Iowa 1994) (finding random mention of an issue without elaboration or supportive authority could not merit the court's consideration). Jennifer and John also complain about communication difficulties and conflicts with DHS and FSRP workers; Jennifer complains these difficulties "inhibited [her] ability to more fully take advantage of the service provided to her." She contends the DHS "should have changed out providers as this conflict directly interfered with Jennifer's ability to demonstrate a willingness to cooperate with services." Again, assuming Jennifer made such requests in the juvenile court, they are too underdeveloped to review on appeal.