# IN THE COURT OF APPEALS OF IOWA

No. 20-1608
Filed March 17, 2021

**IN THE INTEREST OF S.S. and S.S.,**
**Minor Children,**

**N.S., Mother,**
　　Appellant,

**S.S., Father,**
　　Appellant.

_____

　　Appeal from the Iowa District Court for Polk County, Lynn Poschner, District

Associate Judge.


　　Parents appeal the termination of their parental rights to their two children.

**AFFIRMED ON BOTH APPEALS.**


　　Terzo R. Steves, Des Moines, for appellant mother.

　　Bryan J. Tingle, Des Moines, for appellant father.

　　Thomas J. Miller, Attorney General, and Toby J. Gordon, Assistant Attorney

General, for appellee State.

　　Nicole Garbis Nolan of Youth Law Center, Des Moines, attorney and

guardian ad litem for minor children.


　　Considered by Bower, C.J., and Doyle and Mullins, JJ.

**DOYLE, Judge.**

Parents separately appeal the termination of their parental rights to their two children, born in 2015 and 2020.[1]  They contend the State failed to prove grounds for termination.  They argue termination is not in the children's best interests and that permissive factors preclude termination.  The parents also ask for more time.

We review the parents' claims do novo.  *See In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018).  "We give weight to the factual determinations of the juvenile court but we are not bound by them.  Grounds for termination must be proven by clear and convincing evidence.  Our primary concern is the best interests of the child[ren]."  *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006) (citations omitted).

We typically use a three-step process to review the termination of a parent's rights.  *A.S.*, 906 N.W.2d at 472.  First, we determine whether a ground for termination under section 232.116(1) has been established.  *Id.* at 472–73.  If a ground for termination has been established, we then consider "whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights."  *Id.* at 473 (citation omitted).  Finally, we consider "whether any exceptions in section 232.116(3) apply to preclude termination of parental rights."  *Id.* (quoting *In re M.W.*, 876 N.W.2d 212, 220 (Iowa 2016)).

The juvenile court terminated the parents' parental rights to the older child under Iowa Code section 232.116(1)(f) and to the younger child under section 232.116(1)(h).  Although paragraphs (f) and (h) differ over the age of the child and the length of removal, the final requirement of each—clear and convincing

---

[1] An order granting disestablishment of paternity of the legal father was entered by the district court.  He was dismissed from the juvenile court proceedings.

evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time—is the same. *See* Iowa Code § 232.116(1)(f)(4), (h)(4). To satisfy this element, the State must present clear and convincing evidence to show that the child would be exposed to adjudicatory harm if returned to the parent's care at the time of the termination hearing. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting the term "at the present time" to mean to mean "at the time of the termination hearing"); *In re M.S.*, 889 N.W.2d 675, 680 (Iowa Ct. App. 2016) (noting a child cannot be returned to the custody of the parent if doing so would expose the child to any harm amounting to a new child-in-need-of-assistance (CINA) adjudication). The parents challenge the evidence supporting this last element.[2]

The mother asserts she maintained stable housing and employment, she participated in services throughout the vast majority of the case, and that the home is minimally adequate to have her children returned. The father asserts he cooperated with services as recommended by the Iowa Department of Human Services (DHS) throughout most of the case, he maintained stable housing and employment, that the home had the necessary furnishings and clothing for the children, and that visits with the children went well. While this is all positive, it does not establish the State failed to prove by clear and convincing evidence that the children could not be returned to the parents' home without being exposed to some harm amounting to a new CINA adjudication. The parents, both thirty-six years

---

[2] Although the mother does not reference paragraph (f) in her brief, it is apparent from the context of her argument that this omission was an oversight. Under the circumstances, we do not consider the omission as a failure to preserve error.

old at the termination hearing, have a long history of illegal drug use spanning back to their teenage years. The evidence at the October 1, 2020 termination hearing established the parents' drug use issues remained unresolved.

An edited version of the juvenile court's history of this case follows:

> The oldest child, then three years old, was removed from his parents' custody and placed in the custody of DHS in March 2019. The child was found wandering outside alone and shoeless. Police were called and could not find the child's parent or caretaker. The child is on the autism spectrum and was nonverbal at that time. Approximately an hour after police were called to care for the child, the mother called the police to report that he was missing. During the course of the DHS child abuse assessment, the child had a hair sample drug test and tested positive for cocaine, cocaine metabolite—indicating ingestion, methamphetamine, PCP and native marijuana—indicating exposure. The mother reported that she may test positive for marijuana but nothing else. She participated in a drug test and tested positive for PCP in March 2019. The father also participated in a drug test during the assessment and tested positive for PCP in April 2019. When the child was first taken to a shelter in March 2019. The father arrived at the shelter smelling of alcohol.
>
> The child was adjudicated CINA.
>
> The disposition hearing for the child was held in June 2019. The father reported that he drank alcohol two to four times per week but it was not a problem for him. He reported that his last use of PCP and marijuana was March 2019. The father was charged with operating while intoxicated twice in 2018. He completed a substance abuse evaluation in March 2019 and reported that he had not used marijuana for one to two months. He reported drinking alcohol every other day but not drinking for the past two or three weeks. He did not report any other substance use. The evaluator described the father as guarded and dismissive. No treatment was recommended based on the information the father provided. His sweat-patch test from May 2019 was positive for PCP and THC.
>
> The mother reported that she does not drink alcohol. She reported that her last use of cocaine was December 2018, and also reported that her last use of marijuana and PCP was March 2019. The mother completed a sweat-patch drug test in May 2019 that was positive for cocaine, PCP and THC. She provided urine drug screens that were positive for PCP on June 19, June 24, July 12, July 17, and July 21, 2019. The same drug screens were positive for marijuana on each date except July 17, 2019 and August 5, 2019. Her urine

drug screens were negative for all substances from August 10, 2019 through September 4, 2019.

The mother had an encouraging report from a treatment facility on September 12, 2019. The father also had a positive report from the treatment facility on September 10, 2019. The mother completed substance abuse treatment in October 2019, and was scheduled to begin continuing care. She did not attend continuing care. On November 9, 2019, she provided a sweat-patch drug test that tested positive for cocaine and PCP. The father completed treatment and attended continuing care beginning November 7, 2019. He provided a sweat-patch on November 9, 2019 that was positive for PCP. The parents tested positive for PCP again in December 2019 and February 2020. They each tested negative for all substances in a hair test drug screen in May 2020.

The father began mental health therapy on October 1, 2019. He participated in three therapy sessions. He was discharged on February 24, 2020 due to not following through with appointments.

The youngest child was born in March 2020. Neither the child nor the mother tested positive for any illegal substances at the time of the child's birth. The child was removed from his parents' custody on April 1, 2020 and was later adjudicated CINA.

The father had one sweat-patch that was negative for all substances and one sweat-patch that was positive for PCP in June 2020.

The mother tested positive for PCP twice in June 2020. She had another substance abuse evaluation in September 2020. She reported that she has had repeated positive sweat-patch drug tests. She reported that her last use of PCP and marijuana was June 2019. She reported that her last use of alcohol was September 2020, the day before the assessment. No treatment was recommended for the mother based on the information she provided. She met the criteria for moderate phencyclidine use disorder in full sustained remission, mild cannabis use disorder in full sustained remission, and mild alcohol use disorder. The solution-based case (SBC) work notes show that the SBC worker began reminding the mother in August 2020 to have a substance-abuse evaluation. She had a sweat-patch drug screen in September 2020 that was negative for all substances.

The parents were provided many services. In a September 2020 report to the court, a DHS worker reported she was "concerned that while the parents have engaged services, they have not been consistent and may not have gained insight on what has been worked on and applied it to make lasting long term changes." This concern was born out at the termination hearing. Asked why she had not

reengaged in mental health therapy, the mother responded: "Conflict with scheduling with visitation, plus work. Time-wise I just don't have it; not to have time for my personal self. And there was really no point for it. [The therapist] didn't see a point for it. Neither did I." She found no benefit in therapy as, "It was an hour out of my day to talk to somebody about things I already knew how to cope with." She denied being a victim of domestic violence. She explained one incident resulted from two people being drunk and high. The father did not believe substance-abuse treatment was effective for him.

The mother testified she last used illegal drugs in June or July 2019. The father testified he last smoked PCP in May or June 2019. They claimed the later sweat-patch drug screens testing positive for PCP resulted from environmental factors or from sleeping on a couch contaminated with PCP smoke.

On appeal the parents mount a challenge to the positive sweat-patch test results. They point out there were instances of positive sweat-patch test results in the same vicinity of time negative urine drug screens were provided, and after birth of the younger child, the blood cord results came back negative even though there were positive sweat-patch results during the mother's pregnancy. The parents assert they were clean and the sweat-patch results were false positives. We have observed that sweat patch tests are a generally reliable method for determining drug use. *See In re A.C.*, No. 20-0736, 2020 WL 4516075, at *2 (Iowa Ct. App. Aug. 5, 2020); *In re S.B.*, No. 19-1170, 2019 WL 4301591, at *3 n.1 (Iowa Ct. App. Sept. 11, 2019); *see also In re A.W.,* No. 18-0382, 2018 WL 2084913, at *2 (Iowa Ct. App. May 2, 2018) ("Other courts have found that sweat-patch tests are a generally reliable method for determining drug use.").

That is not to say, of course, that positive sweat patch results are invariably a reliable indicator of drug usage. There may well be certain instances where [persons testing positive] offer compelling reasons to believe that positive test results from sweat patches are erroneous. District courts should make such determinations on a case-by-case basis.

*S.B.*, 2019 WL 4301591, at *3 n.1 (quoting *United States v. Meyer*, 483 F.3d 865, 869 (8th Cir. 2007)). In this case the parents presented no compelling reasons to believe the positive sweat-patch results were erroneous.

The juvenile court concluded,

Neither parent has addressed their substance use issues with PCP, marijuana, or alcohol. They could have addressed these issues through participation in substance abuse treatment and mental health therapy. Neither parent sees any benefit in these services. Neither has shown insight into substance abuse or how substance abuse impacts their ability to safely parent.
. . . .
. . . Neither parent is willing to openly discuss their substance abuse issues or accept services to address those issues. Neither parent can or will name their . . . specific sobriety date showing a lack of significance of that date to the parents. The present circumstances are not safe for the children and neither parent sees the benefit to any change.

After our de novo review of the record, we agree with the juvenile court's assessment. The parents' long history of drug use, evidence of continued drug use during the CINA proceedings, and their negative attitude toward treatment inspire no confidence that the parents will maintain sobriety in the long term. The State established by clear and convincing evidence that the children could not be returned to the parents at the time of the termination hearing without exposing the children to any harm amounting to a new CINA adjudication.

We now turn to whether termination is in the children's bests interests. In determining best interests, we "give primary consideration to the child's safety, to

the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). The "defining elements" are the child's safety and "need for a permanent home." *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011) (citation omitted). Neither parent makes much of a best-interests argument. The mother says the best interests of the children is "to preserve the child parent relationship that exist and is deeply rooted in these young children's mind and heart." The father disputes the sweat-patch test results, asserts one child is bonded to his grandmother, and points out the parents were consistent with visitation, having missed very few visits since the children were removed. Giving the issue such short shrift does not merit review. *See State v. Mann*, 602 N.W.2d 785, 788 n.1 (Iowa 1999) (explaining random mention of an issue, without elaboration or supporting authority, is insufficient to prompt an appellate court's consideration). To address the issue under these circumstances, we would be obliged "to assume a partisan role and undertake the appellant's research and advocacy." *Inghram v. Dairyland Mut. Ins. Co.,* 215 N.W.2d 239, 240 (Iowa 1974); *Soo Line R.R. v. Iowa Dep't of Transp.,* 521 N.W.2d 685, 691 (Iowa 1994) ("[R]andom mention of [an] issue, without elaboration or supportive authority, is insufficient to raise the issue for [appellate] consideration."). Even had their best-interests argument been fleshed out, it would fail. In addressing best interests, the juvenile court concluded:

> It is in the best interest of the children to have certainty in their future caregivers and home as soon as possible. The parents have been involved with DHS and juvenile court since March, 2019 without showing sustained sobriety or sustained willingness to address their sobriety. Termination of parental rights is in the children's best interest so that permanency can be established for these very young children.

We agree.

The parents were offered extensive services to correct the circumstances that caused removal of the children but had not yet remedied those issues. The parents have simply not progressed to a point at which their children can be returned to their care. Their substance use presents a clear danger to the children's safety. *See In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012) ("[A]n unresolved, severe, and chronic drug addiction can render a parent unfit to raise children."). Thus the element of safety supports termination. *See id.* ("No parent should leave his small children in the care of a meth addict—the hazards are too great." (citation omitted)). And, "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will . . . be able to provide a stable home for the child." *Id.* at 777 (quoting *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010)). We conclude the parents have been given ample time to get their affairs in order. The children's best interests are best served by providing permanency and stability now. *See id.* at 778 ("It is simply not in the best interests of children to continue to keep them in temporary foster homes while the natural parents get their lives together." (quoting *In re C.K.*, 558 N.W.2d 170, 175 (Iowa 1997))). The children are both placed in foster-to-adopt homes.

The parents seek to avoid termination through the section 232.116(3) permissive factors, which provide that the court "need not terminate the relationship between the parent and child" in some cases. Application of the factors in section 232.116(3) is permissive rather than mandatory, and it depends

on the facts of each case and the children's best interests. *A.S.*, 906 N.W.2d at 475. The parents bear the burden of establishing an exception to termination. *See id.* at 476.

Both parents reference or allude to section 232.116(3)(c). The section provides that "the court need not terminate the relationship between the parent and the child if the court finds . . . [t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c). The mother argues she had a bond with the older child such that termination of her parental rights would negatively impact the child. She states she was developing a bond with the younger child. The father mentions the section but mounts no argument. In any event, at the termination hearing the father denied the older child was on the autism spectrum and stated he had no relationship with the child. There is precious little evidence he had a bond with the younger child. The record does not support application of the statutory permissive factor to avoid termination of the parents' parental rights.

Lastly, the parents request more time. Children are not equipped with pause buttons—their all-important days of childhood cannot be stopped to await the day their mother or father is ready to begin appropriate parenting. *See In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) (holding that the court must not deprive children of permanency on the hope that someday the parent will be able to provide a stable home); *In re L.L.,* 459 N.W.2d 489, 495 (Iowa 1990) ("Children simply cannot wait for responsible parenting."); *In re A.C.,* 415 N.W.2d 609, 613 (Iowa 1987) ("The crucial days of childhood cannot be suspended while parents

experiment with ways to face up to their own problems."). Once the grounds for termination have been proved, time is of the essence. *See In re Z.P.*, 948 N.W.2d 518, 523-24 (Iowa 2020) (stressing importance of statutory time frames); *A.C.,* 415 N.W.2d at 614 ("It is unnecessary to take from the children's future any more than is demanded by statute."); *see also In re R.J.,* 436 N.W.2d 630, 636 (Iowa 1989) (noting that once the time for reunification set by the legislature has expired, "patience on behalf of the parent can quickly translate into intolerable hardship for the children").

Given the parents' track record in response to services and negative attitudes toward treatment, we are unable to conclude "the need for removal . . . will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). The parents have presented us nothing to show that circumstances would be any different six months down the road than they are now.

We conclude the State presented sufficient evidence to support termination of the parents' parental rights and that termination is in the best interest of the children. We decline to apply any permissive factor to avoid termination. We reject the parents' request for more time. We therefore affirm the juvenile court's termination of the parents' parental rights to their two children.

**AFFIRMED ON BOTH APPEALS.**